## No. 13-1123

---

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

JOHN M. DEWEY; PATRICK DEMARTINO; PATRICIA ROMEO;
RONALD B. MARANS; EDWARD O. GRIFFIN, on behalf of themselves
and all others similarly situated,

v.

VOLKSWAGEN AKTIENGESELLSCHAFT; VOLKSWAGEN
BETEILIGUNGS GESELLSCHAFT M.B.H.; VOLKSWAGEN GROUP
OF AMERICA, INC. (f/k/a VOLKSWAGEN OF AMERICA,
INC.); AUDI AG; VOLKSWAGEN GROUP OF AMERICA, INC., d/b/a
AUDI OF AMERICA, INC.;AUDI OF AMERICA, LLC; VOLKSWAGEN
DE MEXICO, S.A. DE C.V.,

(D.C. No. 2-07-cv-02249)

(*Caption continued inside*)

_____

### BRIEF OF APPELLANTS

---

On Appeal From the United States District Court
For the District of New Jersey
Faith S. Hochberg, District Judge

---

John J. Pentz
19 Widow Rites Lane
Sudbury, MA 01776
T: 978.261.5725
F: 978.405.5161
jjpentz3@gmail.com

JACQUELINE DELGUERICO; LYNDA GALLO; FRANCIS NOWICKI; KENNETH BAYER, individually and on behalf of all others similarly situated,
v.
VOLKSWAGEN OF AMERICA, INC.; VOLKSWAGEN GROUP OF AMERICA, INC.; VOLKSWAGEN OF AMERICA, INC., d/b/a AUDI OF AMERICA, INC.; VOLKSWAGEN AG; AUDI AG; VOLKSWAGEN DE MEXICO, S.A. DE. C.V.; ABC ENTITIES 1-20

(D.C. No. 2-07-cv-02361)

DAVID T. MURRAY, JENNIFER B. MURRAY, Appellants

# TABLE OF CONTENTS

Table of Contents………………………………………………...…….3

Table of Authorities………………………………………….…..…….4

Jurisdictional Statement……………………………………………..6

Statement of the Issues ..................................... ……………..…….………..6

Related Cases and Proceedings.......................................................7

Statement of the Case……………………………………………..7

Statement of the Facts……………………………………………9

Summary of Argument……………………………………..…..…..…..12

Argument………………………………………………………....…13

I.      The District Court Committed Clear Error In Applying Federal Law
        To Class Counsel's Fee Request in This Diversity Case…....….…..13

II.     New Jersey Law Limits Fees to No More Than
        1.35 Times   Lodestar.........................................................18

III.    Under a Percentage of Fund Analysis, The Court Should Have
        Taken The Current Claims Data Into Account When Valuing
        Injunctive Relief................................................................25

Conclusion……………………………………………………27

Certifications.......................................................................28

Appendix .....................................………………………29

# TABLE OF AUTHORITIES

page

*Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421U.S. 240 (1975).....12

*Chin v. Chrysler, LLC,* 538 F.3d 272 (3d Cir. 2008)............................12, 13

*City of Englewood v. ExxonMobil Corp*.,
406 N.J. Super. 110, 966 A.2d 1082 (App. Div.2009).................................24

*Dewey v. Volkswagen Aktiengesellschaft*,
681 F.3d 170 (3rd Cir.2012)......................................................................6, 9

*Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546 (D.N.J. 2010)..........8

*Erie Railroad C. v. Tompkins*, 304 U.S. 64 (1938)...............................*passim*

*Furst v. Einstein Moomjy, Inc*., 182 N.J. 1, 860 A.2d 435 (2004)................23

*Guaranty Trust Co. v. York,* 326 U.S. 99 (1945)................................13

*Heinl v. Heinl*, 287 N.J. Super. 337, 671 A.2d 420 (App. Div. 1996)..........24

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001).......12

*In re: Volkswagen and Audi Warranty Extension Litig.*,
692 F.3d 4 (1st Cir. 2012)..................................................................7, 15, 16

*Lafferty v. St. Riel,* 495 F.3d 72, 76 (3d Cir. 2007).......................................12

*Mitzel v. WestinghouseElectric Corp.,* 72 F.3d 414 (3d Cir. 1995)..............14

*Perdue v. Kenny A.*, 130 S. Ct. 1662, 1667 (2010)......................................24

*Rendine v. Pantzer*, 661 A.2d 1202 (N.J. 1995).....................................17, 18

*Schmoll v. J.S. Hovnanian & Sons, LLC*,
394 N.J. Super. 415, 947 A.D.2d 146, 147-8 (App.Div. 2007)....................22

*Security Mutual Life Ins. Co. v. Contemporary Real Estate Assocs.*,
979 F.2d 329 (3d Cir. 1992)........................................................................12

*Sutter v. Horizon Blue Cross/Blue Shield of New Jersey*,
966 A.2d 508 (App. Div. 2009)(*Sutter I*)......................................................19

*Sutter v. Horizon Blue Cross/Blue Shield of New Jersey,*
2012 N.J. Super. Unpub. LEXIS 1661 (July 12, 2012)(*Sutter II*)................19

*The Education Station Day Care Center Inc. v. Yellow Book USA, Inc.*,
194 N.J. 271, 944 A.2d 31 (2008)................................................................18

*Township of West Orange v. 769 Associates, LLC,*
198 N.J. 529, 969 A.2d 1080 (2009)...........................................................23

## STATEMENT OF JURISDICTION

1.  **District Court's Jurisdiction.**  The District Court had jurisdiction

    over this case under 28 U.S.C. §1332(d) because Plaintiff Dewey

    is a citizen of the State of Maryland, and Defendant Volkswagen of

    America, Inc. is incorporated in, and has its corporate headquarters

    located within, the State of New Jersey, and the total amount in

    controversy exceeds $5,000,000.

2.  **Appellate Jurisdiction.**  This Court has jurisdiction pursuant to

    28 U.S.C. § 1291.  The district court entered its order and final

    judgment on December 14, 2012.  Appellants filed their Notice of

    Appeal on January 10, 2013.

## STATEMENT OF ISSUES

1.  Did the district court err as a matter of law in applying federal

    common law to class counsel's fee application in this diversity case in

    which New Jersey law applies?  This issue was raised in Appellants'

    Objection to Request for Attorneys' Fees.  A. 59.  It was overruled in

    the district court's fee opinion.  A. 16.

## RELATED CASES AND PROCEEDINGS

This appeal has been consolidated with another appeal from the district court's fee award, No. 13-1124.   This case was before this Court previously.  *See Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3rd Cir. 2012).

## STATEMENT OF THE CASE

This appeal arises in the context of a settlement of a class action in a diversity case involving claims arising under New Jersey law.  A previous settlement in the case was reversed and remanded by this Court in 2012. *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3rd Cir. 2012).  On remand, the parties amended the settlement to permit all class members to make claims against the cash fund on an equal basis, but otherwise left the settlement unchanged.  A. 255.  Class Counsel requested as attorneys' fees the same amount that the district court had awarded to them in 2010, $9.2 million, which Volkswagen did not oppose.  A. 291.  The Murray Appellants filed an objection to Class Counsel's fee request, and appeared at the hearing held on Class Counsel's fee motion.  A. 194.

Remarkably, this appeal presents a legal issue of first impression in this Circuit – namely, what law governs an award of attorneys' fees in a diversity class action case?   This is why the district court was unable to cite

to one relevant decision of this Court in support of her fee award, and why the Appellants relied on a factually identical case decided by the First Circuit.  The Third Circuit has simply never had this precise issue presented to it in a case in which jurisdiction is founded solely on diversity.

Since the time of this Court's prior opinion reversing and remanding this case to the District of New Jersey, the United States Court of Appeals for the First Circuit has held unequivocally that state law must govern a fee request in a case based on diversity jurisdiction, irrespective of FRCP 23(h). *In re: Volkswagen and Audi Warranty Extension Litig.*, 692 F.3d 4 (1st Cir. 2012).  This Court should reach the same decision in this case, given that it is the only result consistent with *Erie Railroad C. v. Tompkins*, 304 U.S. 64 (1938).

The district court held hearings on November 9, 2013 and December 5, 2013, and issued its order awarding $9.2 million in fees on December 14, 2013, stating that it was applying federal law to the fee request.  A. 3.  The Murrays filed their Notice of Appeal on January 10, 2013.  A. 1.

## STATEMENT OF FACTS

This action was brought for alleged defects in the pollen filters and sunroof drains installed on Volkswagen and Audi vehicles equipped with sunroofs. A. 301. The Complaint alleged claims arising solely under New Jersey statutory and common law. *Id*.

In 2010, the parties reached a settlement of this lawsuit. The settlement provided for a maximum cash reimbursement fund of $8 million, as well as preventative maintenance information and free service actions. The district court approved the settlement, and awarded Class Counsel an attorneys' fee of $9.2 million based upon the percentage of the fund method, and comparisons with percentage fees awarded in federal cases. *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546 (D.N.J. 2010).

In its 2010 fee award, the district court determined that class counsel's reasonable lodestar is approximately $4.6 million. *Id*. at 608. The district court found that there are numerous factors that caused it to conclude that the settlement in this case does not represent the "rare and exceptional" result that would call for the highest lodestar multiplier permitted under the law. *Id*. at 608-609 ("To begin with, the Court does not consider this case to have achieved such an extraordinary result that the plaintiffs' counsel should be paid more than twice the lodestar figure."). The court awarded a

fee that represented a multiplier of 2.0 because it was "within the range the Circuit has approved." *Id*. at 609.

The district court also found in 2010 that the value of the settlement is $69.2 million, and based that valuation in part on the cost of future repairs avoided by the educational preventative maintenance information. *Id*. at 596 ("the Court assigns as the value for preventative maintenance the costs of repairs avoided"). The district court also accepted Plaintiffs' expert's opinion that $14.5 million worth of claims would be submitted for past damage. *Id*. at 597.

Volkswagen opposed the 2010 fee request as inconsistent with New Jersey law, and appealed the fee award to this Court.

On appeal, this Court reversed and remanded the settlement to the district court, because the settlement excluded a particular subclass from the cash reimbursement fund. While this Court did observe that the district court had been thorough in its cross-examination of Plaintiffs' expert at the first fairness hearing, that observation had nothing to do with the issue of the proper method of calculating attorneys' fees. *See Dewey v. Volkswagen Akteingesellschaft*, 681 F.3d 170, 177 n.8. Instead, that observation arose in the context of an objector's challenge to the settlement's value for purposes of determining the fairness, reasonableness and adequacy of the settlement.

With regard to the choice-of-law issue relevant to the attorneys' fee award, this Court specifically declined to reach that issue, and recognized that "these issues may arise again and may necessitate another appeal." 681 F.3d at 190 n.20.

On remand, the parties amended the settlement to give every class member the opportunity to make a claim against the reimbursement fund, but otherwise left the settlement unchanged, including the choice of law provision. The amended settlement stipulates that the settlement agreement is governed by New Jersey law. A. 297.

The value of claims actually submitted by the deadline is just $4.85 million, rather than the $14.5 million projected. A. 73.

On remand, Class Counsel requested the same amount that the district court awarded them in 2010, and Volkswagen did not oppose the fee request, even though Volkswagen had appealed the $9.2 million fee award in 2010. Document 370.

## SUMMARY OF ARGUMENT

New Jersey law governs the award of attorneys' fees in this diversity case, because this action was based exclusively on New Jersey law, and the Settlement Agreement designates New Jersey law as the governing law. New Jersey law generally limits lodestar multipliers to 1.35 in all but the most rare and exceptional circumstances.  The district court's factual findings in its 2010 fee order make clear that this is not a case that would permit a multiplier of greater than 1.35.  Therefore, the court should have awarded an attorneys' fee of no more than $6.2 million.

Pursuant to *Erie*, the award of attorneys' fees in diversity and pendent jurisdiction claims is governed by state substantive law.  Therefore, the district court's application of federal or Third Circuit fee law to Class Counsel's fee request constitutes reversible error.  In addition, the claims data submitted in November 2012 demonstrates that the Court overvalued the settlement in 2010 when it accepted Plaintiffs' expert's claims projections.

## ARGUMENT

**I.    The District Court Committed Clear Error In Applying Federal Law To Class Counsel's Fee Request in This Diversity Case.**

### A.    Standard of Review.

A district court's award of attorneys' fees is reviewed for abuse of discretion, which can occur "if the judge fails to employ the proper legal standard." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001).   Here, the district court applied the incorrect legal standard, which means that this Court's review is plenary.  L.A.R. 28.1(b)

### B.    Argument.

The rule of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78 (1938) requires that in a diversity case "the law to be applied is the law of the State" (the "*Erie* doctrine"). As this Court has recognized, the *Erie* doctrine affords district courts no discretion. To the contrary, "a federal court *must* apply the substantive law of its *forum state* in diversity actions." *Lafferty v. St. Riel,* 495 F.3d 72, 76 (3d Cir. 2007). It is by now settled that, for purposes of the *Erie* doctrine, the award of attorneys' fees is a matter of substantive state law. *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 259, n. 31 (1975); *Chin v. Chrysler, LLC,* 538 F.3d 272, 279 (3d Cir. 2008); *Security Mutual Life Ins. Co. v. Contemporary Real Estate Assocs.*, 979 F.2d 329, 331-32 (3d Cir. 1992).

Here, the district court refused to apply New Jersey law to her determination of attorneys' fees, and elected instead to calculate the attorneys' fee on the basis of purported "federal law." This determination runs afoul of the constitutional underpinnings of *Erie,* 304 U.S. at 74-75, 80, by permitting substantially different results "for the same transaction" based on "the accident of a suit by a non-resident litigant in a federal court instead of in a state court a block away." *Guaranty Trust Co. v. York,* 326 U.S. 99, 109 (1945).

The district court failed to follow this Court's guidance in *Chin,* 538 F.3d at 279, regarding the application of the *Erie* doctrine in a diversity case. In *Chin,* this Court was asked to review a district court's determination to apply California state law to an application for attorneys' fees in a diversity action. This Court prescribed the following two step process to be applied in every diversity case where a choice of law issue is presented: first, the court must determine whether the issue before it is substantive or procedural. Second, if the issue is substantive, "the court must then perform a choice-of-law analysis to determine which state's substantive law applies." 538 F.3d at 278.

In *Chin,* after acknowledging that awarding attorneys' fees is a matter of substantive law for purposes of an *Erie* analysis, this Court performed a

choice of law analysis to determine which law New Jersey courts would apply to the issue before it. *Chin,* 538 F.3d at 279 ("when a choice-of-law question exists, a district court must apply the choice-of-law rules of the state in which it sits in order to determine which state's law applies").

The fact that New Jersey regards attorneys' fees as procedural for choice-of-law purposes was dispositive in *Chin* and is dispositive here. It means that New Jersey law must be applied to the issue of attorneys' fees, even if the law of a different state governs the substantive causes of action underlying the litigation, because "New Jersey law considers that matters relating to attorneys' fees fall within the sphere of the state's 'paramount concern with its courts.'" *Mitzel v. WestinghouseElectric Corp.,* 72 F.3d 414, 418 (3d Cir. 1995).

Here, of course, not only does New Jersey law govern all of the substantive causes of action which have all been pled under New Jersey law, but the parties have expressly agreed to the application of New Jersey law to the Settlement Agreement. That agreement must be enforced.

Here, the district court applied federal common law to Class Counsel's fee request based upon her determination that Fed. R. Civ. P. 23(h) provides an independent grounds for application of federal law. FRCP 23(h) is a rule of procedure, however, while the calculation of attorneys' fees is a

substantive matter. *See In re: Volkswagen and Audi Warranty Extension Litig.*, 692 F.3d 4 (1st Cir. 2012).

The facts in *In re: Volkswagen* were virtually identical to this case: there was no common fund, the value of the settlement depended upon the number of claims filed by class members, and the defendants agreed to pay reasonable attorneys' fees, which would not be deducted from a settlement fund, as part of a settlement agreement. The First Circuit rejected class counsel's argument that the parties' agreement provides an independent basis on which to depart from the "basic premise" that fee awards are substantive, not procedural, and are therefore governed by state law in diversity cases.

> Rule 23(h) does not provide a free-floating grant of authority to apply federal law to award attorneys' fees in class actions; rather, it allows the federal court to make fee awards where they "are authorized by law or by the parties' agreement." ... The first portion is of no help to class counsel;... The portion of Rule 23(h) authorizing fee awards pursuant to the parties' agreement does not here provide a federal-law basis governing the award. The settlement agreement itself has no agreement that federal law applies.

*Id*. at 15-16.

Here, as in *In re: Volkswagen*, not only is there no agreement that federal law applies, but there is an *explicit provision* choosing New Jersey law as the law governing the entire settlement agreement.[1] A. 297.

The First Circuit also rejected the argument that the court's inherent equitable powers gave it the discretion to award attorneys' fees pursuant to any method other than the one specified by the governing state law.

> The basis for the award here is the agreement itself, a contract under state law, not federal law. The fact that attorneys' fees are provided for by the settlement agreement is one of several reasons why there is no basis to resort to these federal equitable doctrines. ... Beyond that, this is not a common fund or a common benefit case, and so equitable powers to award attorneys' fees are unavailable under those theories. The common fund method should apply only where attorneys seek compensation from a discernible pot of money won by the plaintiffs... In any event, the reasonable fees class counsel will receive come not out of the settlement proceeds but are in addition to the settlement proceeds, rendering the common fund method inapplicable.

*Id*. at 16.

The district court incorrectly concluded that, in the absence of actual fee-shifting, federal law applies. As demonstrated by *In re: Volkswagen*, *supra*, state law applies where the fee is authorized by a contract that is

---

[1] While this Court speculated that the choice-of-law provision in the settlement agreement might change on remand, the parties have retained the same choice-of-law clause designating New Jersey state law as the applicable law. *See Dewey*, *supra*, 681 F.3d at 190.

governed by state law.  In this case, the state law relevant to a determination

of attorney's fees is New Jersey's, based upon the Settlement Agreement's

choice of law clause, as well as the Complaint, which alleges only violations

of New Jersey law.  A. 301.

## II.    New Jersey Law Limits Fees to No More Than
   1.35 Times  Lodestar.

The district court's incorrect choice of law is not harmless error, since

the fee awarded pursuant to federal law exceeds the maximum permissible

fee calculated pursuant to New Jersey law.  In contrast to federal common

law in this Circuit, New Jersey state law limits maximum attorneys' fees in

actions brought pursuant to statutes that contain a fee-shifting provision,

regardless of whether those actions result in the creation of a common fund.

*See Rendine v. Pantzer*, 661 A.2d 1202, 1231 (N.J. 1995).

> We also discern from our review of the extensive litigation
> concerning contingency enhancements that fee awards of
> double the lodestar represent the high end of attorney fee
> awards under fee-shifting statutes:
>
>> Before the Supreme Court began to address contingent
>> mutlipliers, the size of contingency enhancements varies
>> both according to the type of litigation and the degree of
>> risk involved in the individual lawsuit.  Although the
>> lower courts' tendency to fail to spell out precisely how
>> much of a fee enhancement was due to contingency and
>> how much to other factors makes any breakdown
>> inherently imprecise, a total multiplier of 2, representing
>> all enhancing factors, appears typically to have been
>> applied as a ceiling in public interest litigation….

…

> We conclude that contingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar.  Such enhancements should never exceed one-hundred percent of the lodestar, and an enhancement of that size will be appropriate only in the rare and exceptional case in which the risk of nonpayment has not been mitigated at all, i.e., where the "legal" risk constitutes "an economic disincentive independent of that created by the basic contingency in payment… and the result achieved… is significant and of broad public interest."

*Id.* at 1230-31.

The New Jersey Supreme Court has affirmed the continuing application of *Rendine* to common fund class action settlements arising under New Jersey law.  *See The Education Station Day Care Center Inc. v. Yellow Book USA, Inc.*, 194 N.J. 271, 944 A.2d 31 (2008).

The district court cited to two lower appellate court opinions in support of the notion that New Jersey follows Third Circuit fee law, and that therefore any reference to New Jersey law simply directs the court back to federal common law.  However, the New Jersey Supreme Court has never approved the application of a pure percentage of the fund analysis without reference to the lodestar, and has never approved a lodestar multiplier of more than 1.5. *Rendine* remains the law of the land.

In *Sutter v. Horizon Blue Cross/Blue Shield of New Jersey*, 966 A.2d 508 (App. Div. 2009)(*Sutter I*), the Appellate Division described the two methods of calculating attorneys' fees in a class action, citing exclusively to federal law. *Id*. at 519.   The Appellate Division cited to no New Jersey case permitting the application of the common fund method in a class action settlement. *Id*.   Because the Appellate Division cannot overrule the New Jersey Supreme Court, that portion of *Sutter I* that provides a review of federal fee law must be considered mere *dicta* and non-binding.  The Appellate Division reversed and remanded to the lower court because the court had not performed an adequate review of the fee and had not determined "the hourly rate derived from the percentage."  *Id*. at 520.

*Sutter* was, like this settlement, a non-cash settlement in which the value derived mostly from injunctive relief, and thus valuation of the settlement depended upon expert testimony and projections of value to the class. Therefore, it is not surprising that, on remand, the superior court calculated an attorneys' fee based upon class counsel's lodestar, guided by *Rendine, supra*. *See Sutter v. Horizon Blue Cross/Blue Shield of New Jersey,* 2012 N.J. Super. Unpub. LEXIS 1661 at **18-19  (July 12, 2012)(*Sutter II*)("citing *Rendine* ... the judge noted that multiplier should be in twenty-five to thirty-five percent range").

20

Based upon the outcome in *Sutter II, supra*, in which the trial court ultimately followed the New Jersey Supreme Court's opinion in *Rendine* and awarded a fee based upon class counsel's lodestar multiplied by 1.35, it is clear that anything the Appellate Division stated in *Sutter I* is pure *dicta*, since it was unnecessary to the result reached in that case.

Furthermore, pursuant to N.J. Court Rule 4-42-9(b), an application for attorneys' fees must be supported by "an affidavit of services addressing the factors enumerated by RPC 1.5(a)."[2] This requirement applies not only to an effort to recover attorneys' fees authorized by statute, N.J. Court Rule 4:42-9(a)(8), but also to the recovery of attorneys' fees in a class action. Thus, N.J. Court Rule 4:32-2(h), by its terms, specifically incorporates the requirements of Rule 4:42-9(b) to an application for attorneys' fees in a class action. It provides:

---

[2] RPC 1.5(a) lists the following factors:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
(8) whether the fee is fixed or contingent.

> In an action certified as a class action, an application for the award of attorney's fees and litigation expenses, if fees and costs are authorized by law, rule or the parties' agreement, shall be made in accordance with R.4:42-9.

Here, the class plaintiffs were prevailing parties under the New Jersey

Consumer Fraud Act ("CFA"). It is undisputed that the Settlement

Agreement resulted in the entry of a final judgment which is enforceable in

federal court. That judgment provided the class with much of the relief

sought in the complaint. Accordingly, plaintiffs' attorneys were entitled to

fees pursuant to the CFA.

New Jersey law is settled that a plaintiff can "prevail" for fee-shifting

purposes through settlement as well as through litigation.

> It is by now clear that adjudication of liability under a fee-shifting statute is not a prerequisite to fee entitlement under that statute so long as the relief obtained in a settlement of the litigation is substantially that sought in the complaint, is evidenced by an enforceable judgment, and was brought about by the litigation. See, e.g., *Tarr v. Ciasulli*, 181 N.J. 70, 85-87, 853 A.2d 921 (2004); *Warrington v. Vill. Supermarket, Inc*., 328 N.J. Super. 410, 420-23, 746 A.2d 61 (App.Div. 2000); *Stockton v. Rhulen*, 302 N.J. Super. 236, 240-43, 695 A.2d 309 (App.Div.1997); *H.I.P. (Heightened Independence & Progress, Inc.) v. K. Hovnanian at Mahwah VI, Inc.*, 291 N.J. Super. 144, 154-57, 676 A.2d 1166 (Law Div.1996); See also, *Coleman v. Fiore Brothers, Inc.*, 113 N.J. 594, 552 A.2d 141 (1989) (authorizing counsel fees in settlement of CFA claims).

*Schmoll v. J.S. Hovnanian & Sons, LLC*, 394 N.J. Super. 415, 417-8, 947

A.D.2d 146, 147-8 (App.Div. 2007) (finding class plaintiffs were prevailing

parties based on injunctive relief agreed to in settlement of CFA claim).
Here, the district court's 2010 determination that class plaintiffs were not
prevailing parties was contrary to strong, policy-based New Jersey law and,
therefore, was itself a violation of the *Erie* doctrine.

Thus, regardless of whether the recovery of attorneys' fees is based on
the statutory fee shifting authorized pursuant to the New Jersey CFA, or by
"the parties' agreement" as part of a class action settlement, the standard
under which attorneys' fees must be calculated in New Jersey is one and the
same -- lodestar.

In *Furst v. Einstein Moomjy, Inc*., 182 N.J. 1, 860 A.2d 435 (2004),
the New Jersey Supreme Court held: "Rule of Professional Conduct 1.5(a)
commands that a lawyer's fee shall be reasonable in **all** cases, not just fee-
shifting cases. RPC 1.5(a) catalogues the 'factors to be considered in
determining the reasonableness of a fee,'… Those factors must inform the
calculation of the reasonableness of a fee award in this and **every** case." *Id*.
at 21-22 (citations and quotations omitted) (emphasis added); s*ee also
Township of West Orange v. 769 Associates, LLC*, 198 N.J. 529, 532, 969
A.2d 1080 (2009) ("In respect of the calculation of fees, we hold that, as in
**all** other cases, the analysis is governed by the reasonableness principles of
RPC 1.5."); *Rendine,* 141 N.J. 292 (1995) (It is well settled in New Jersey

that lodestar is the appropriate standard to be applied in evaluating the reasonableness of a fee award); *Heinl v. Heinl*, 287 N.J. Super. 337, 350, 671 A.2d 420 (App. Div. 1996) ("In determining the reasonableness of **any** fee award, '[t]he initial focus in the calculus is appropriately directed to the time expended in pursuing the litigation.'"). *Cf. City of Englewood v. ExxonMobil Corp.*, 406 N.J. Super. 110, 124-125, 966 A.2d 1082 (App. Div. 2009) (holding the lodestar provisions of RPC 1.5 apply to statutory fee-shifting cases as well as cases not involving fee-shifting statues).

Finally, under federal law there is a "strong presumption" that the lodestar figure is a reasonable fee. *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1667 (2010).

The district court's award of a fee representing twice class counsel's reasonable lodestar is excessive under New Jersey law and exceeds the maximum fee permissible under governing New Jersey fee law.

### III.  Under a Percentage of Fund Analysis, The Court Should Have Taken The Current Claims Data Into Account When Valuing Injunctive Relief.

Even if New Jersey law permitted a common fund fee analysis in these circumstances, the district court erred when it used the 2010 valuation of the settlement, which was based upon an expert's projections, rather than the actual claims data available in 2012.  Appellants raised this issue at the December 5, 2012 fairness hearing in response to the claims data that had been filed on November 7, 2012.  A. 199-204.  The district court ruled on this objection in her fee opinion.  A. 18.

In 2010, the district court accepted Plaintiffs' expert Dr. Eads' projection that claims worth $14.5 million would be submitted by class members against the $8 million cash reimbursement fund.  728 F. Supp. 2d at 597.  In fact, only approximately $4.85 million worth of claims were submitted by the deadline, A. 73, or 33% of the amount projected by Dr. Eads.[3]

The district court assumed that a certain amount of damage to vehicles would be avoided as a result of the preventative maintenance educational information, and used Dr. Eads' inflated claims projection as the basis for valuing that component of the settlement.  728 F. Supp. 2d at 596.  The court arrived at a value for the educational information of $13.1 million.  *Id.*

---

[3] This means that $3 million of the $8 million cash reimbursement fund will likely be distributed to *cy pres*, and will not directly benefit the class.

Applying the same discount to the projected future damage as has been confirmed by the actual claims data would reduce this figure to $4.37 million (33% x $13.1 million).

These two components of the settlement, which were valued at approximately $21 million in 2010, should have been reduced to $10 million to reflect the actual claims data, and the fact that the value of the injunctive relief provided by the settlement is far lower than projected in 2010, because the amount of damage that was projected to occur in the absence of that injunctive relief was grossly overstated.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should reverse the district court's fee award that was impermissibly based upon federal common law, and remand for calculation of a reasonable fee pursuant to governing New Jersey law.

David T. Murray,
Jennifer B. Murray,
By their attorney,


*/s/ John J. Pentz*
John J. Pentz, Esq.
19 Widow Rites Lane
Sudbury, MA 01776
T: 978.261.5725
F: 978.405.5161
jjpentz3@gmail.com

## CERTIFICATION

I, John Jacob Pentz III, hereby certify the following:

(1)     I am a member of the Bar of the Court of Appeals for the Third
        Judicial Circuit;

*/s/ John J. Pentz*
John J. Pentz

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 14, 2013 I filed the foregoing Brief via

the ECF filing system for the United States Court of Appeals for the Third

Circuit, and that as a result each counsel of record received an electronic

copy of this Brief on June 14, 2013.

*/s/ John J. Pentz*
John J. Pentz

## APPENDIX VOLUME I

Page

1.    Notice of Appeal…………………………………………….…..A.1

2.    Opinion Awarding Attorney's Fees……….………………….…....A.3

3.    Order and Judgment.........................................................................A.24

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DEWEY, et al., | ) | |
|     Plaintiffs, | ) | |
| v. | ) | Case Nos.: |
| VOLKSWAGEN AG, et al., | ) | |
|     Defendants. | ) | 07-CV-2249-FSH-PS |
|  | ) | 07-CV-2361-FSH-PS |
| DELGUERCIO, et al., | ) | (consolidated) |
|     Plaintiffs, | ) | |
| v. | ) | |
| VOLKSWAGEN GROUP OF | ) | |
| AMERICA, INC., et al., | ) | |
|     Defendants. | ) | |

## OBJECTION TO REQUEST FOR ATTORNEY'S FEES

Class members and Objectors David T. Murray and Jennifer B. Murray appeal to the United States Court of Appeals for the Third Circuit from this Court's Opinion (Document 419), Order Granting Motion for Attorneys' Fees (Document 420), and Order and Final Judgment (Document 421) entered by this Court on December 14, 2012.

Respectfully submitted,
David T. Murray, Jennifer B. Murray,
By their attorneys,


*/s/ Vincent S. Verdiramo*
VINCENT S. VERDIRAMO
VERDIRAMO & VERDIRAMO ESQS, PA
3163 Kennedy Blvd.
Jersey City NJ 07306
(201) 798-7082
(201) 798-4627
mmf036@aol.com

John J. Pentz,
19 Widow Rites Lane
Sudbury, MA 01776
Phone: (978) 261-5725
Fax: (978) 405-5161

A. 1

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed via the ECF filing system on January 10, 2013, and that as a result electronic notice of the filing was served upon all attorneys of record.

_/s/ Vincent S. Verdiramo_
Vincent S. Verdiramo

A. 2



1 of 1 DOCUMENT

**JOHN M. DEWEY, et al., Plaintiffs, v. VOLKSWAGEN OF AMERICA, et al., Defendants. JACQUELINE DELGUERCIO, et al., Plaintiffs, v. VOLKSWAGEN OF AMERICA, et al., Defendants.**

**Civil Action No. 07-2249,Civil Action No. 07-2361**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2012 U.S. Dist. LEXIS 177844*

**December 14, 2012, Decided
December 14, 2012, Filed**

**PRIOR HISTORY:** *Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 2012 U.S. App. LEXIS 10932 (3d Cir. N.J., 2012)*

**COUNSEL:** **[*1]** For Paul M Kaufman, Objector: VINCENT SAVINO VERDIRAMO, LEAD ATTORNEY, VERDIRAMO & VERDIRAMO, JERSEY CITY, NJ.

For Joshua West, Lester Brickman, Darren McKinney, Michael Sullivan, Objectors: DAVID MARC NIEPORENT, LEAD ATTORNEY, SAMUEL & STEIN, NEW YORK, NY.

For Robert and Katherine Falkner, Objector: STEPHEN TSAI.

For David Sacks, Objector: DOUGLAS A. COLE, LEAD ATTORNEY, STEM & COLE, MILFORD, NJ.

For Michael A. Brusca, Objector: FORREST SCOTT TURKISH, LEAD ATTORNEY, BAYONNE, NJ.

DANIEL SIBLEY, Objector, Pro se, DALLAS, TX.

DAVID STEVENS, Objector, Pro se, BONHAM, TX.

For JOHN M. DEWEY, on behalf of themselves and all others similarly situated, Plaintiff: ANGELO JOSEPH GENOVA, DINA MARIE MASTELLONE, LEAD ATTORNEYS, GENOVA BURNS GIANTOMASI & WEBSTER, NEWARK, NJ.

For PATRICK DEMARTINO, PATRICIA ROMEO, Ronald B. Marans, Edward O. Griffin, Plaintiffs: ADAM M. SLATER, LEAD ATTORNEY, MAZIE SLATER KATZ & FREEMAN, ROSELAND, NJ; ANGELO JOSEPH GENOVA, DINA MARIE MASTELLONE, LEAD ATTORNEYS, GENOVA BURNS GIANTOMASI & WEBSTER, NEWARK, NJ.

For LYNDA GALLO, Francis Nowicki, KENNETH BAYER, Plaintiffs: ADAM M. SLATER, LEAD ATTORNEY, MAZIE SLATER KATZ & FREEMAN, ROSELAND, NJ; MATTHEW ROSS MENDELSOHN, LEAD ATTORNEY, **[*2]** MAZIE SLATER KATZ & FREEMAN LLC, ROSELAND, NJ.

For JACQUELINE DELGUERCIO, individually and on behalf of all others similarly situated, Consol Plaintiff: ADAM M. SLATER, LEAD ATTORNEY, MAZIE SLATER KATZ & FREEMAN, ROSELAND, NJ.

For VOLKSWAGEN OF AMERICA, INC., VOLKSWAGEN OF AMERICA, INC., doing business as AUDI OF AMERICA, INC., Defendants: JEFFREY L. CHASE, LEAD ATTORNEY, CHASE KURSHAN

A. 3

HERZFELD & RUBIN LLC, LIVINGSTON, NJ;
KEITH ANDREW FREDERICK, LEAD ATTORNEY,
HERZFELD & RUBIN PC, NEW YORK, NY; PETER
J. KURSHAN, CHASE, KURSHAN, HERZFELD &
RUBIN, LLC, LIVINGSTON, NJ.

For VOLKSWAGEN AG, AUDI AG, VOLKSWAGEN
DE MEXICO, S.A. DE C.V., Defendants: JEFFREY L.
CHASE, LEAD ATTORNEY, CHASE KURSHAN
HERZFELD & RUBIN LLC, LIVINGSTON, NJ;
KEITH ANDREW FREDERICK, HERZFELD &
RUBIN PC, NEW YORK, NY.

For      VOLKSWAGEN      BETEILIGUNGS
GESELLSCHAFT M.B.H., Defendant: JEFFREY L.
CHASE, LEAD ATTORNEY, CHASE KURSHAN
HERZFELD & RUBIN LLC, LIVINGSTON, NJ.

For VOLKSWAGEN GROUP OF AMERICA INC.,
AUDI OF AMERICA, LLC, Defendants: JEFFREY L.
CHASE, LEAD ATTORNEY, CHASE KURSHAN
HERZFELD & RUBIN LLC, LIVINGSTON, NJ;
KEITH ANDREW FREDERICK, LEAD ATTORNEY,
HERZFELD & RUBIN PC, NEW YORK, NY.

MS. PAMELA E KULSRUD COREY, Objector [*3]
Pro Se and on behalf of objector Troy Corey, Defendant,
Pro se, POUND RIDGE, NY.

For Ms. Sally J. van Haitsma, Tara M Castaldo,
Defendants: FORREST SCOTT TURKISH, LEAD
ATTORNEY, BAYONNE, NJ.

For J.M. Cooper, NJ, Defendant: STEPHEN TSAI.

For JACQUELINE DELGUERCIO, Interested Party:
ADAM M. SLATER, LEAD ATTORNEY, MAZIE
SLATER KATZ & FREEMAN, ROSELAND, NJ;
DAVID M. FREEMAN, LEAD ATTORNEY, MAZIE,
SLATER, KATZ & FREEMAN, LLP, ROSELAND, NJ;
ERIC D. KATZ, LEAD ATTORNEY, MAZIE,
SLATER, KATZ & FREEMAN, LLC, ROSELAND, NJ;
MATTHEW    ROSS    MENDELSOHN,    LEAD
ATTORNEY, MAZIE SLATER KATZ & FREEMAN
LLC, ROSELAND, NJ.

**JUDGES:** Patty Shwartz, United States Magistrate
Judge.

**OPINION BY:** Patty Shwartz

**OPINION**

**SHWARTZ, United States Magistrate Judge**

**I. INTRODUCTION**

This class action concerns allegedly defective pollen
filter gasket areas and sunroof drains on various
Volkswagen and Audi vehicles. It is before the Court on
remand from the Court of Appeals for the Third Circuit
for proceedings consistent with that Court's finding that
the class could not be certified under the parties' prior
settlement because the representative plaintiffs were not
adequate to represent the interests of the entire class. See
*Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170
(3d Cir. 2012).* [*4] On remand, the parties reached a
new settlement addressing the Third Circuit's adequacy
concern, which now allows class members who owned or
leased vehicles in a so-called "residual group" [1] to seek
reimbursement in the same way as those who were in the
so-called "reimbursement group." [2] The Plaintiffs have
filed a new motion for: (1) certification of the settlement
class; (2) final approval of the class settlement; (3) an
award of attorneys' fees; (4) reimbursement of costs; and
(5) an incentive award. The Objectors who pursued an
appeal to the Third Circuit have filed a separate motion
for: (1) attorneys' fees; (2) reimbursement of costs; and
(3) an incentive award. For the reasons stated in this
Opinion, the motions are granted as set forth below.

> 1    The residual group contained class members
> who "were required to wait until the
> reimbursement group made its claims" and "could
> then make 'goodwill' claims [for cash
> reimbursement for repairs to their vehicles from]
> the remaining money" in the $8 million settlement
> fund. *Dewey, 681 F.3d at 173.*
> 2    The reimbursement group contained class
> members who "received the right to [cash]
> reimbursement for certain qualifying damages."
> *Dewey, 681 F.3d at 173.*

**II. BACKGROUND** [*5] **AND RELEVANT FACTS**

For the procedural history of this matter preceding
the appeal, the Court incorporates by reference its
summary of the procedural history in *Dewey v.
Volkswagen of America, 728 F. Supp. 2d 546, 558-63
(D.N.J. 2010).* As previously stated, the Court of Appeals
remanded the case to address a single, curable structural
error regarding the adequacy of the plaintiffs to represent

A. 4

all class members.

Following remand, the Court convened several telephone conferences with the parties and the objectors concerning a new settlement that would comply with the Third Circuit's ruling. During a conference on June 26, 2012, the parties reported that they had reached an agreement as to the terms of a new settlement, and on June 27, 2012, the Court directed the parties to submit a joint motion for preliminary approval of the New Settlement Agreement by July 20, 2012. (Order, June 27, 2012, ECF No. 320.) On July 19, 2012, the Court granted an extension until July 27, 2012, for the parties to submit a new settlement agreement and proposed notice to the impacted class members. (Order, July 19, 2012, ECF No. 324.) On July 27, 2012, the Plaintiffs submitted a motion for preliminary approval [*6] of the settlement class and the New Settlement Agreement. (Mot., July 27, 2012, ECF No. 326.) On July 31, 2012, the Defendants submitted a certification, (Gsovski Cert., July 31, 2012, ECF No. 329), containing a copy of the New Settlement Agreement. The New Settlement Agreement modifies the rights of those class members formerly in the "residual group" [3] consisting of owners and lessees of the following vehicles:

  o 1998-2000 and 2007-2009 Volkswagen New Beetle with VINs 3VW--1C-7M514779 or higher, equipped with sunroof;

 o 1997-1999 Volkswagen Jetta A3 with VINs with "1W" in position 7 and 8, 1999-2000 Volkswagen Jetta A4 with VINs with "9M" in position 7 and 8, and 2008-2009 Volkswagen Jetta A5 with VINs with "1K" in position 7 and 8, equipped with sunroof;

 o 1997-1999 Volkswagen Golf/GTI A3 with VINs with "1W" in position 7 and 8, 1999-2000 Volkswagen Golf/GTI A4 with VINs with "1J" in position 7 and 8, and 2008-2009 Volkswagen Golf/GTI A5 with VINs with "1K" in position 7 and 8, equipped with sunroof;

 o 1998 Volkswagen Passat B5;

 o 1997 Volkswagen Passat B4 and 2006-2009 Volkswagen Passat B6 equipped with sunroof;

 o 2004-2009 Volkswagen Touareg;

 o 2005-2008 Audi A4 B7 Platform

equipped with [*7] sunroof, in MY2005, with VINs with "8E" in position 7 and 8 and also "A" or "D" or "K" or "G" in position 4 (including S and RS versions);

 o 1997 Audi A6 C4;

 o 2005-2009 Audi A6 C6 equipped with sunroof with VINs with "4A" or "4F" in position 7 and 8 (including S and RS versions); and

  o 1997-2009 Audi A8 (including S versions).

(Id.) [4] The motion for preliminary approval was granted and notice of the settlement, which included deadlines to file claims and to object and seek exclusion, was sent to the class. [5]

 3 The rights of those class members formerly in the "reimbursement group" remain unchanged. This group consists of owners and lessees of the 2001-2007 Volkswagen New Beetle with VINs below 3VW-1C-7M514779 equipped with sunroof; 2001-2005 Volkswagen Jetta A4 Sedan with VINs with "9M" in position 7 and 8 and 2001-2005 Volkswagen Jetta A4 Wagon with VINs with "1J" in position 7 and 8 equipped with sunroof; 2001-2006 Volkswagen Golf A4 and Volkswagen GTI A4 with VINs with "1J" in position 7 and 8 equipped with sunroof; 2005-2007 Volkswagen Jetta A5 with VINs with "1K" in position 7 and 8 equipped with sunroof; 2006-2007 Volkswagen Golf/GTI A5 with VINs with "1K" in position 7 and 8 equipped [*8] with sunroof; 1999-2005 Volkswagen Passat B5; 1997-2006 Audi A4, B5, and B6 Platforms in MY2005 with VINs with "8E" in position 7 and 8 and "J" or "L" or "V" or "P" or "X" in position 4, and MY2005 and MY2006 with VINs with "8H" in position 7 and 8 (including Cabrio, S, and RS version); and 1998-2005 Audi A6 C5 with VINs with "4B" in position 7 and 8 (including Allroad, S, and RS version).

 4 The settlement agreement submitted in July 2012 inadvertently omitted one vehicle from its class definition, the 2001-2005 Volkswagen Jetta A4 Sedan (VIN with "9M" in position 7 and 8), but that vehicle continues to be entitled to relief under the New Settlement Agreement, (id. ¶¶ 1.31; 4.2; see also Def. Ltr., Oct. 29, 2012, ECF No. 380), and the error was corrected in a Third

Supplemental Amended and Superseding Agreement of Settlement filed on November 15, 2012. (Pl. Ltr., Nov. 15, 2012, ECF No. 397.)

5    On August 1, 2012, the Court heard oral argument by telephone regarding the preliminary approval motion. (See Text Order, July 30, 2012, ECF No. 327.) On August 8, 2012, the Court granted the Plaintiffs' motion for preliminary approval of the settlement class and approved the proposed form, content, [*9] and manner of notice to all members of the residual group. (Order, Aug. 8, 2012, ECF No. 335.) The Defendants subsequently submitted a proposed revised order that: (1) embodied the Court's handwritten modifications to the previous order; (2) corrected paragraph numbering anomalies; and (3) corrected the class definition to conform with the New Settlement Agreement. (Ltr., Sept. 5, 2012, ECF No. 338.) The Court signed the Amended Order on September 6, 2012. (Am. Order, Sept. 6, 2012, ECF No. 339.)

Presently before the Court are: (1) the Plaintiffs' motions for certification of a settlement class and approval of the New Settlement Agreement, as well as an award of fees and costs to Class Counsel and incentive awards to the class representatives; [6] (2) objections to the New Settlement Agreement; [7] and (3) the motions of the West and Sibley Objectors for fees, incentive awards, and costs. [8]

6    On October 16, 2012, the Plaintiffs submitted a motion for final approval of the New Settlement Agreement and for attorneys' fees and costs. (Final Approval Mot., Oct. 16, 2012, ECF No. 370.) On November 7, 2012, the Plaintiffs filed a supplemental brief in support of approval of the settlement. (Br. [*10] in Support of Settl., Nov. 7, 2012, ECF No. 386.) On November 7, 2012, the Defendants submitted a declaration from the settlement administrator. (Eisert Decl. I, Nov. 7, 2012, ECF No. 384.) On November 14, 2012, Class Counsel filed a list containing one hundred affected class members requesting exclusion and a list of four objections as of that date. (Pl. Ltr., Nov. 14, 2012, ECF No. 396.) On December 4, 2012, the Defendants submitted a supplemental declaration from the settlement administrator. (Eisert Decl. III, Dec. 4, 2012, ECF No. 412.) On November 14, 2012, Class Counsel filed a complete list of all class members requesting exclusion, including the 105 affected class members requesting exclusion from the New Settlement Agreement. (Pl. Ltr., Dec. 11, 2012, ECF No. 416.)

7    The objections to the New Settlement Agreement are addressed in Section IV.C.2.a infra.

8    On August 27, 2012, objectors Daniel Sibley and David Stevens [the "Sibley Objectors"] filed a consent motion for attorneys' fees. (Sibley Mot., Aug. 27, 2012, ECF No. 337.) On October 16, 2012, objectors Joshua West, Lester Brickman, Darren McKinney, and Michael Sullivan [the "West Objectors"] filed a motion for attorneys' [*11] fees and costs and for incentive awards. (West Mot., Oct. 16, 2012, ECF No. 369.) On December 3, 2012, the West Objectors submitted an additional declaration concerning costs. (Frank Costs Decl., Dec. 3, 2012, ECF No. 411.) On December 3, 2012, the Sibley Objectors filed a bill of costs. (Sibley Bill of Costs, Dec. 3, 2012, ECF No. 413.) On December 11, 2012, the West Objectors submitted an additional declaration concerning attorneys' fees and costs. (Frank Supp. Fees Decl., Dec. 11, 2012, ECF No. 417.)

Based upon the record and the governing law, the Court makes the following findings of fact and conclusions of law.

### III. JURISDICTION

#### A. Subject Matter Jurisdiction

The Court incorporates by reference its discussion of subject matter jurisdiction in *Dewey, 728 F. Supp. 2d at 563-64.*

#### B. Personal Jurisdiction

The Court incorporates by reference its discussion of personal jurisdiction in *Dewey, 728 F. Supp. 2d at 564.* As stated therein, sufficient notice has already been provided to those class members in the "reimbursement group," whose rights have not changed from the prior settlement. See *id. at 571-72.* As to those class members in the "residual group," whose rights have changed, sufficient [*12] notice of the new settlement and an opportunity to be heard has been provided, (Dewey, ECF Nos. 326, 329, 335, 339), thereby satisfying due process

and the requirements of *Fed. R. Civ. P. 23(b)(3)*. *Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812-13, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985)*; *In re Prudential Ins. Co. of Am. Sales Practice Litig., 148 F.3d 283, 306 (3d Cir. 1998)* ("In re Prudential"); *Varacallo v. Mass. Mut. Life Ins. Co., 226 F.R.D. 207, 224 (D.N.J. 2005)*. Specifically, pursuant to the Amended Preliminary Approval Order, notice to those class members of the settlement has been provided by: (1) mail and publication; (2) the establishment of a toll-free telephone number providing settlement information; and (3) the maintenance of a website containing notice and settlement documents. (Am. Order, Sept. 6, 2012, ECF No. 339.) The mailed notice provided an explanation of the settlement as well as instructions for filing a claim, objecting to the settlement, and excluding oneself from the settlement. (Mot. for Settl. Exs. A1-8, July 27, 2012, ECF No. 326.)

As to the website, the West Objectors learned that as of October 15, 2012, the website address listed in the mailed notice displayed information related **[*13]** to the 2010 settlement, rather than the 2012 settlement, and only upon clicking on what the West Objectors describe as a "non-obvious link buried in small print" would a class member be directed to a different address containing information on the New Settlement Agreement and claim submission materials. [9] (Frank Fees Decl. ¶ 27, Oct. 15, 2012, ECF No. 369.) By October 19, 2012, the settlement website was updated to the satisfaction of the West Objectors. (Frank Notice Decl. I ¶ 20, Nov. 8, 2012, ECF No. 389.) Relying on website statistics that the West Objectors received from the Defendants, from September 10, 2012 to October 14, 2012, there were 4,970 new visitors to the main website and 1,309, or 26.3%, of those visitors clicked through to the page containing information about the New Settlement Agreement, whereas from October 20 to October 31, 2012, there were 677 new visitors to the main website and 466, or 68.8%, of those visitors clicked through to the information about the New Settlement Agreement. (Id. ¶ 22.) Using these statistics, the West Objectors assert that the error on the website deterred or impeded class members who visited the website before approximately October **[*14]** 15, 2012 from getting detailed information about the 2012 settlement and thus the Defendants failed to comply with the Order that required a proper website to be hosted. In a joint letter dated November 8, 2012, Class Counsel stated that, despite these statistics, there has been sufficient notice and opportunity to submit a claim, but that the website may have caused confusion before it was

modified on or about October 15, 2012, (Jt. Ltr. 3, Nov. 8, 2012, ECF No. 392). At the Fairness Hearing, however, Class Counsel pointed out that no class member reported confusion. (Fairness Hearing II 22:00.) The Defendants contend that the notice to the class and opportunity to submit a claim is and was at all times in full compliance with the Preliminary Approval Order and all legal requirements. (Id.) On November 30, 2012, the Defendants submitted declarations in further support of their position regarding the settlement website issue. (Gsovski Decl., Arturi Decl., & Eisert Decl. II, Nov. 30, 2012, ECF No. 405.) The declarations assert that: (1) even though information related to the 2010 settlement remained on the website, the 2012 settlement information is and was always available through **[*15]** a link on the page to a different website address "in a manner used throughout the World Wide Web"; (2) there is no evidence that any class members were confused and the absence of any communications from class members about the website suggests that it did not cause confusion or deter claims; (3) the statistics of the number of claims and click-through rates do not suggest any confusion; and (4) the West Objectors do not represent a confused class member and thus lack standing to object on the basis of the website issue. (Gsovski Decl.) In response, the West Objectors assert that: (1) the link to the 2012 settlement information was not sufficiently prominent for an objective class member to readily locate it; and (2) the claim rate of affected class members is below expectations, which suggests that the website caused confusion or deterred claims. (Frank Notice Decl. II, Dec. 3, 2012, ECF No. 410.)

[9]    On November 8, 2012, the West Objectors filed a Declaration by Theodore Frank concerning the settlement website. (Frank Notice Decl. I, Nov. 8, 2012, ECF No. 389.) The Court then issued an Order requiring the parties to submit a joint letter containing their positions on that issue and **[*16]** on whether the Fairness Hearing should proceed as scheduled the next day. (Order, Nov. 8, 2012, ECF No. 390.) The parties filed that letter, (Jt. Ltr., Nov. 8, 2012, ECF Nos. 391 & 392), and, based upon the representations in the joint letter, the Court issued an Order converting the scheduled in-person Fairness Hearing into a telephonic hearing. (Order, Nov. 8, 2012, ECF No. 393.) On November 9, 2012, the Court held that telephonic hearing, during which it addressed the settlement website issue raised in the Frank

A. 7

Declaration and inquired about other issues relevant to the pending motions. On November 20, 2012, the Defendants filed a letter responding to a question the Court raised during the November 9, 2012 telephonic hearing about whether the Defendants could resolve the settlement website issue by identifying the class members who had visited the website on particular dates via internet protocol addresses. (Def. Ltr., Nov. 20, 2012, ECF No. 401.) The Defendants thereafter submitted declarations in support of their position that the website sufficiently informed the class members about their rights. (Gsovski Decl., Arturi Decl., & Eisert Decl. II, Nov. 30, 2012, ECF No. 405; Corrected [*17] Decls., Dec. 3, 2012, ECF No. 408). On December 3, 2012, the West Objectors submitted an additional declaration regarding the website issue. (Frank Notice Decl. II, Dec. 3, 2012, ECF No. 410.)

No one contends that this is an issue of constitutional magnitude, but rather the West Objectors assert that the website issue suggests that the Defendants failed to comply with the Preliminary Approval Order. No party disputes the accuracy of the exhibits to the first Frank Notice Declaration, which demonstrate that the website plainly contained the details of the 2010 settlement, including a chart stating that claims for reimbursement needed to be postmarked by July 23, 2010. (Frank Notice Decl. I Ex. 1 & 2, Nov. 8, 2012, ECF No. 389.) Upon clicking a hyperlink in an "Update" section on the right side of the page, however, class members would be directed to information about the New Settlement Agreement. This possible lack of clarity on the settlement website, in isolation, could be viewed as presenting a potential risk that class members could be confused, but the entire record must be reviewed to determine if there is a violation of the Order as a result of this potential risk, and whether [*18] the risk requires re-notification. The undisputed record shows that: (1) each of the 1,095,350 class members was mailed written materials that provided information about the settlement and a telephone number for the claims administrator to whom the class members could pose questions, (see Eisert Decl. I ¶¶ 4-6; Notice Form, July 31, 2012, ECF No. 329); (2) the mailed notice explained that claims for reimbursement were to be mailed with supporting documentation to an address stated on the notice; (3) the mailed notice informed each class member that he or she could either visit the website

to obtain a declaration form if the class member lacked supporting documentation for reimbursement or call a specific telephone number if the class member could not obtain the form on the website; and (4) no class member contacted Class Counsel, defense counsel, the administrator, or the Court to complain about the website or seek guidance as a result of its contents. (Gsovski Decl. ¶ 36; Eisert Decl. II ¶ 5; Fairness Hearing II 22:00.) These facts demonstrate that those class members who wanted to file a reimbursement claim had sufficient ability to do so and had clear notice of how to seek assistance. [*19] The Court cannot ignore the fact that, of the 1,095,350 class members to whom notice of the New Settlement Agreement was sent, and of the 4,490 class members to have contacted the settlement administrator via telephone, email, or mail, (Fairness Hearing II 10:30), not a single one expressed confusion about the website. The West Objectors acknowledged during the second phase of the Fairness Hearing on December 5, 2012 that the complete absence of any complaint or inquiry from class members regarding the website undermines the conclusion that the website statistics show confusion or deterrence from filing claims. (Fairness Hearing II 22:30.)

Moreover, the configuration of the website before October 15, 2012 does not require a finding that the website was deficient or failed to comply with the Preliminary Approval Order. First, a link existed on the webpage that contained the 2012 settlement documents. Second, as the Court observed in assessing the validity of an objection in 2010 concerning a missing link on the website, the class does not lack access to information simply because it may be slightly difficult to access the information from a particular source if there are alternative [*20] sources for that information. See *Dewey, 728 F. Supp. 2d at 580-81*. Finally, while the West Objectors argue that there were fewer additional reimbursement claims than they expected, there is no evidentiary basis to conclude that the number of new claims is lower than it should have been because of the temporary configuration of the website. The Court therefore concludes that the notice was adequate and the website configuration prior to October 15, 2012 is not a reason to require re-notice.

Thus, the Court is satisfied that proper notice has been provided and the temporary configuration of the website did not violate the Preliminary Approval Order. Notice of the settlement to the affected class members

complied with the Preliminary Approval Order and the exercise of personal jurisdiction over them is proper.

## C. Magistrate Judge Jurisdiction

On November 10, 2009, the United States District Judge approved the parties' request to consent to Magistrate Judge jurisdiction "to conduct all settlement proceedings and enter final judgment," pursuant to *28 U.S.C. § 636(c)*. (Dewey, ECF Nos. 158, 159; Delguercio, ECF No. 124.) The named parties' consent to magistrate judge jurisdiction permits the **[*21]** Court to decide all issues related to the motions for final approval of the class settlement and attorneys' fees. [10] See *Dewey, 681 F.3d at 180-81.*

> 10    Objector Braverman filed a motion to intervene for the purpose of objecting to Magistrate Judge jurisdiction and to enable him to have a different judge rule on his objection to Class Counsel's request for attorneys' fees, (Mot. to Intervene, Nov. 6, 2012, ECF No. 381), which was denied for failing to satisfy the elements set forth in *Fed. R. Civ. P. 24.* (Order & Opinion, Nov. 21, 2012, ECF Nos. 403 & 406.)

## IV. DISCUSSION

### A. Class Certification

For the Court to certify a class, the plaintiffs must satisfy all of the requirements of *Rule 23(a)*, and one of the requirements of *Rule 23(b)*. *Fed. R. Civ. P. 23(a)-(b)*. Class certification cannot be presumed and a class may be certified only after a rigorous analysis demonstrates that all *Rule 23* requirements are met. See *In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 307 (3d Cir. 2008)*. Even where a plaintiff seeks certification of a settlement class, [11] as opposed to formal class certification, courts "must consider the propriety of certification as if the case were to go to trial." *In re Prudential, 962 F. Supp. at 508.* **[*22]** With these rules in mind, the Court now addresses the class certification factors.

> 11    A settlement class is "a device whereby the court postpones the formal certification procedure until the parties have successfully negotiated a settlement, thus allowing a defendant to explore settlement without conceding any of its arguments against certification." *In re Prudential Ins. Co. of*

*Am. Sales Practices Litig., 962 F. Supp. 450, 508 (D.N.J. 1997)* (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 786 (3d Cir. 1995)* ("In re Gen. Motors")) (internal citations omitted).

### 1. Rule 23(a)

Under *Rule 23*, a class action is appropriate when:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

*Fed. R. Civ. P. 23(a)*. These prerequisites are known as numerosity, commonality, typicality, and adequacy. *Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994)*. They are "meant to assure both that **[*23]** class action treatment is necessary and efficient and that it is fair to the absentees . . . ." Id.

As to numerosity, commonality, and typicality, the Court incorporates by reference its analysis and findings set forth in *Dewey, 728 F. Supp. 2d at 565-67.*

As to adequacy, the Court reviews the new settlement in light of the Third Circuit's ruling in *Dewey, 681 F.3d at 180-90*, to determine if the representative parties will "fairly and adequately protect the interests of the class." *Id. at 181* (quoting *Fed. R. Civ. P. 23(a)(4)*); *In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 532 (3d Cir. 2004)* (same). The Court must evaluate "conflicts of interest between named parties and the class they seek to represent." *In re Warfarin, 391 F.3d at 532.* This requires the Court to determine whether or not there is "'antagonism between [the named plaintiffs'] objectives and the objectives of the [class]', [which constitutes] a 'legally cognizable conflict of interest' between the two groups." *In re Ins. Brokerage Antitrust Litig., Civ. No. 04-5184, 2007 U.S. Dist. LEXIS 11163, 2007 WL 542227, at *15 (D.N.J. Feb. 16, 2007)* (quoting *Jordan v. Commonwealth Fin. Sys., Inc., 237 F.R.D. 132, 139 (E.D. Pa. 2006)*).

The Third Circuit **[*24]** held that the class as previously certified did not satisfy *Rule 23(a)(4)* because the representative plaintiffs were each members of the "reimbursement group" and had an incentive to carve out as many class members as possible into the unrepresented "residual group." *Dewey, 681 F.3d at 187 n.15*. By eliminating the distinction between the "reimbursement group" and the "residual group" and treating each class member similarly by allowing each to seek reimbursement for repairs, the New Settlement Agreement resolves the adequacy problem the Third Circuit identified. The named plaintiffs are now in the same position as all other class members because each of them owned or leased the subject vehicles that contained the allegedly defective plenum or sunroof drain system, received allegedly inadequate maintenance recommendations and, as a result, suffered the same injury. Like the putative class members, the named plaintiffs have an interest in obtaining redress for damage or avoiding future damage caused by the allegedly defective systems. Under the New Settlement Agreement, the representative plaintiffs have no incentive to prioritize recovery for one group over another, since each class **[*25]** member will be treated similarly. By "do[ing] away with the distinction between the reimbursement group and the residual group, and allow[ing] all members of the class to submit reimbursements with no difference in priority," the settlement addresses the Circuit's adequacy concerns in a way it suggested. *Dewey, 681 F.3d at 189*. Thus, the proposed class representatives are adequate, and the Court appoints Jacqueline DelGuercio, Lynda Gallo, Francis Nowicki, Kenneth Bayer, John M. Dewey, Patrick DeMartino, Patricia Romeo, Ronald B. Marans, and Edward O. Griffin as class representatives.

**2. Rule 23(b)**

The Court incorporates by reference its finding that the requirements of *Rule 23(b)* are satisfied, as set forth in *Dewey, 728 F. Supp. 2d at 568-70*.

### B.Appointment of Class Counsel

Having certified a class for settlement purposes, and consistent with the Third Circuit's directive to assess adequacy of counsel separately under *Rule 23(g)*, see *Dewey, 681 F.3d at 182 n.13*, the Court next considers appointment of class counsel.

In appointing class counsel, the court:

(A) must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience **[*26]** in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class; [and]

(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class . . . .

*Fed. R. Civ. P. 23(g)*. The Court's prior discussion and findings reflect consideration of the factors set forth in *Rule 23(g)*. See *Dewey, 728 F. Supp. 2d at 567* (assessing counsel's qualifications, experience, conduct, and work performed in the case). The Court incorporates by reference its discussion and findings concerning counsel's adequacy, and further notes that counsel expended additional effort litigating the case on appeal, quickly revised the settlement to comply with the Third Circuit's mandate, and promptly sought to implement the terms of the new settlement. (See Dewey, ECF Nos. 315, 320, 326, 370.) The Court therefore appoints Adam M. Slater and his firm Mazie Slater Katz & Freeman LLC and Samuel P. Sporn and his firm Schoengold & Sporn, P.C. as co-lead class counsel.

### C.Fairness of the Class Action Settlement

*Rule 23(e)* **[*27]** requires court approval of any class action settlement and sets forth procedures to be followed for deciding whether approval should be granted. [12] *Fed. R. Civ. P. 23(e)*; *Varacallo, 226 F.R.D. at 235*. The procedures "strengthen the process of reviewing proposed class-action settlements" and "assure adequate representation of class members who have not participated in shaping the settlement." *Fed. R. Civ. P. 23(e)* advisory committee's note (2003 Amendments). *Rule 23(e)* requires the Court to follow these procedures and "make findings that support the conclusion that the settlement is fair, reasonable, and adequate. The findings must be set out in sufficient detail to explain to class members and the appellate court the factors that bear on

applying the standard." Id.

12 Specifically, *Rule 23(e)* provides:

The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval. The following procedures apply to a proposed settlement . . .

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that **[*28]** it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under *Rule 23(b)(3)*, the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

*Fed. R. Civ. P. 23(e).*

The Court approaches the parties' request for approval of their settlement mindful of its obligation under *Rule 23* and the fact that "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors, 55 F.3d at 784*; see also *Ehrheart v. Verizon Wireless, 609 F.3d 590, 594-95 (3d Cir. 2010)* (recognizing that settlements conserve judicial resources

and enable the parties to avoid the costs and risks of a complex trial). This policy is further supported by the advantages **[*29]** to the parties of a settlement as "they have far greater control of their destiny than when a matter is submitted to a jury," and reflects the consideration that "the time and expense that precedes the taking of such a risk can be staggering." *Weiss v. Mercedes-Benz of N. Am., Inc., 899 F. Supp. 1297, 1300 (D.N.J. 1995).*

Here, the settlement requires the defendants to provide certain benefits to owners or lessees of particular VW and Audi vehicles. Under the settlement's terms, all class members receive educational preventative maintenance materials, including mailings that recommend inspections and cleaning of the sunroof and plenum drain systems. (New Settlement Agreement ¶ 4.1.) All class members are eligible to receive full reimbursement from a non-exhaustible $8 million fund for expenses incurred for "[r]eimbursable [r]epairs for cleaning, drying, or replacement of carpeting, including padding, and/or repair or replacement" of affected vehicle components. (Id. ¶¶ 4.2-4.6.) Additionally, some class members with particular vehicle models [13] will also receive "[r]emoval of sunroof drain 'duckbill' valves on both front sunroof drains and an inspection of front sunroof drains and drain **[*30]** hoses for function." (Id. ¶ 4.2.)

13 Models included in this group are: 2001-2007 Volkswagen New Beetle vehicles with Vehicle Identification Number ("VIN") below 3VW--1C-7M514779 equipped with sunroof, 2001-2005 Jetta A4 Sedan (VIN with "9M" in position 7 and 8), 2001-2005 Volkswagen Jetta A4 Wagon vehicles (VIN with "1J" in position 7 and 8) equipped with sunroof, 2001-2006 Volkswagen Golf A4 (VIN with "1J" in position 7 and 8) equipped with sunroof, and written objection or request for exclusion postmarked no later than November 1, 2012. (Am. Volkswagen GTI A4 vehicles (VIN with "1J" in position 7 and 8) equipped with sunroof.

Notice of the New Settlement Agreement was transmitted to affected class members pursuant to the Amended Preliminary Approval Order, using the best practicable notice methods under the circumstances. (Eisert Decl. I.) Specifically, notice of, and information about, the new settlement was: (1) mailed to class

members described in 1.31(b) of the New Settlement Agreement [14] ; (2) provided through a website established for the purpose of posting the notice, claims forms, settlement agreement, and other relevant documents; (3) provided through a toll-free telephone [*31] number established to provide information to class members; and (4) published in the USA Today newspaper on September 20, 2012. (Id. ¶¶ 3-7.) Out of the 1,095,350 notices mailed to class members, as of October 31, 2012, the settlement administrator had received an estimated 109,505 returned as undeliverable, 3,143 of which had a forwarding address. (Id. ¶ 5.) Also as of October 31, 2012 and since the September 10, 2012 notice mailing: (1) the settlement administrator received 3,399 telephone calls, with 1,212 of them being transferred to a customer service representative, (id. ¶ 6); (2) there were 8,727 visitors to the settlement website, 7,587 of them being from unique internet protocol addresses; and (3) the settlement administrator received 341 emails relevant to this case. (Id. ¶ 10.)

> 14    Class members described in 1.31(a) of the New Settlement Agreement were already provided proper notice and since this Agreement does not affect or modify the rights of those class members, no further notice was required to be given to those class members.

The Amended Preliminary Approval Order and New Settlement Agreement notified class members that they could object to the settlement or be excluded [*32] from the class by submitting a Prelim. Order 6, Sept. 5, 2012, ECF No. 338; New Settlement Agreement ¶ 13.1.) By operation of the Court's Standing Order dated November 1, 2012, all deadlines were extended until November 7, 2012 due to Hurricane Sandy. (D.N.J. Standing Order 12-2.) Thus, objections and exclusions received by that date are deemed timely. Here, 105 individuals sought exclusion, five lodged objections, and as of November 26, 2012, 2218 eligible class members filed reimbursement claims. (Eisert Decl. III ¶ 3.)

These events show that the putative class received valid, due, and sufficient notice of the settlement and these proceedings. Accordingly, the notice complies with due process requirements, thereby satisfying *Rule 23(e)*.

Furthermore, experienced counsel for the parties, along with the West and Sibley Objectors, seek approval of the settlement. Experienced class counsel's approval is entitled to considerable weight and favors finding that the

settlement is fair. See *In re Cendant Corp. Litig., 264 F.3d 201, 232 n.18 (3d Cir. 2001)* ("In re Cendant") (citing *In re Gen. Motors, 55 F.3d at 785); In re Warfarin, 391 F.3d at 535; Varacallo, 226 F.R.D. at 240*. Moreover, that [*33] the objectors who vigorously opposed the prior settlement support the new settlement further supports a finding that the new settlement is fair and reasonable. Even with counsel's concurrence, however, the Court must carefully examine the fairness and reasonableness of the settlement, as it serves as a fiduciary that "guard[s] the claims and rights of the absent class members." *Ehrheart, 609 F.3d at 593*.

In this Circuit, the factors set forth in *Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975)*, are used to determine whether a class settlement is fair and reasonable. See *In re Warfarin, 391 F.3d at 534-35*. The Girsh factors are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery [*34] in light of all the attendant risks of litigation.

*Girsh, 521 F.2d at 157* (citation, internal quotation marks, and alterations omitted). In addition, in *In re AT & T Corp., 455 F.3d 160, 165 (3d. Cir. 2006)*, the appellate court observed that:

> district courts should also consider other potentially relevant and appropriate factors, including, among others: the maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the

extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re AT & T Corp., 455 F.3d at 165* **[*35]** (quoting *In re Prudential, 148 F.3d at 323*) (internal quotation marks omitted). The Court has considered all of these factors to the extent they are applicable to decide whether to approve or reject the proposed class action settlement.

### 1. The Complexity, Expense, and Likely Duration of the Litigation

As to the complexity, expense, and likely duration of the litigation absent settlement, the Court incorporates by reference its findings in *Dewey, 728 F. Supp. 2d at 573*, and concludes that this factor weighs in favor of approving the settlement.

### 2. The Reaction of the Class to the Settlement

The second factor the Court must consider is the reaction of the settlement class to the settlement. Under this factor, courts "attempt[] to gauge whether members of the class support the settlement." *In re Warfarin, 391 F.3d at 536* (citations and internal quotation marks omitted). Courts do this by looking at the "number and vociferousness of the objectors." *In re Gen. Motors, 55 F.3d at 812*. While courts "generally assume[] that 'silence constitutes tacit consent to the agreement,'" the "practical realities of class actions [have] led a number of courts to be considerably more cautious about inferring **[*36]** support from a small number of objectors to a sophisticated settlement." Id. (quoting *Bell Atl. Corp. v. Bolger, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)*) (recognizing that "[e]ven where there are no incentives or informational barriers to class opposition, the inference of

approval drawn from silence may be unwarranted").

As to the reaction of class members unaffected by the modifications in the New Settlement Agreement, the Court incorporates by reference its findings in *Dewey, 728 F. Supp. 2d at 573-74*.

Among the 1,095,350 class members affected by the modifications in the New Settlement Agreement, only 105 [15] chose to exclude themselves from the class. (Eisert Decl. I ¶ 14; Dellinger Exclusion, Oct. 17, 2012, ECF No. 374; Schleimer Exclusion, Sept. 17, 2012, ECF No. 348; Ferraccio Exclusion, Nov. 8, 2012, ECF No. 394.)

> 15    The settlement administrator received 102 exclusion requests and three additional exclusion requests were submitted only to the Court. (Pl. Ltr., Dec. 11, 2012, ECF No. 416; Pl. Ltr., Nov. 14, 2012, ECF No. 396.)

Among the 1,095,350 class members affected by the modifications in the New Settlement Agreement, five [16] objected pursuant to *Fed. R. Civ. P. 23(e)(5)* (stating **[*37]** that "[a]ny class member may object to the proposal if it requires court approval under this subdivision (e)"), and of the five, only two objected to the terms of the settlement itself, as opposed to the fee application. (Pl. Ltr. Ex. 2, Nov. 14, 2012, ECF No. 396; Neff Objection, Nov. 13, 2012, ECF No. 399.) This small number of objections to the settlement itself may be indicative of endorsement. See *In re Prudential, 148 F.3d at 318*; *Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-19 (3d Cir. 1990)* (10% objection rate indicates class favors settlement); *Bolger, 2 F.3d at 1313-14*; *Weiss, 899 F. Supp. at 1301* (a small percentage of objections allows an inference that a majority silently consents); *Varacallo, 226 F.R.D. at 237-38*. Moreover, as set forth herein, none of the objections support a finding that the settlement is not fair or reasonable. *Bailey v. AK Steel Corp., Civ. No. 06-468, 2008 U.S. Dist. LEXIS 16704, 2008 WL 495539, at *4 (S.D. Ohio Feb. 21, 2008)* (stating that the "existence of objections does not mean that the settlement is unfair . . . [and] it is clear under the applicable law that even majority opposition to a settlement cannot serve as an automatic bar to a settlement" that a court finds **[*38]** to be fair).

> 16    On September 24, 2012, Michael and Elaine Gardner filed an objection to the settlement, arguing that it does not provide adequate relief to class members who did not repair their vehicles.

(Gardner Objection, Sept. 24, 2012, ECF No. 362.) On October 23, 2012, David and Jennifer Murray filed an objection to class counsel's motion for fees and expenses, arguing that class counsel's fees must be calculated under New Jersey state law. (Murray Objection, Oct. 23, 2012, ECF No. 375.) The Murrays will be counted as two separate objectors because they have two vehicles, even though they only filed one objection containing arguments applicable to both. On November 6, 2012, Peter Braverman filed, among other things, an objection to class counsel's motion for fees and expenses, arguing that the Court should convene a new hearing on valuation and Class Counsel's fees, apply New Jersey law, inquire into individual billing entries, and reduce the hourly rate. (Braverman Objection, Nov. 6, 2012, ECF No. 383.) On November 13, 2012, Daniel Neff filed an objection to the settlement, arguing that the class members are actually responsible for their own damages and the Defendants should **[*39]** not be held liable. (Neff Objection, Nov. 13, 2012, ECF No. 399.) The Court notified the parties and objectors that no additional testimony would be considered in connection with settlement valuation or Class Counsel's fee request but that the parties and objectors would be permitted to orally argue their positions on those subjects. (Order, Nov. 27, 2012, ECF No. 404.)

**a. Objections to the Settlement**

**i. Reimbursement for Future Repairs**

The first objection [the "Gardner Objection"] asserts that the new settlement is not fair because it does not provide compensation for vehicle owners who have not yet had repairs performed. (Gardner Objection, Sept. 24, 2012, ECF No. 362.) Owners of affected vehicles who have not yet had repairs performed are members of the settlement class, (New Settlement Agreement ¶ 1.31), and are eligible to file reimbursement claims for repairs that are made during a five-year period. (Id. ¶ 6.1); see also *Dewey, 728 F. Supp. 2d at 579*. This likely addresses part of this objector's concern as it provides relief when a repair is made. To the extent the objector objects because he believes compensation should be provided even where the class member expended no money **[*40]** to repair damage, the objection does not require rejecting the

settlement. Allowing compensation for those who actually incur an expense is a reasonable remedy, but permitting those who expended no funds to obtain money would be tantamount to an impermissible windfall. The requirement that cash payments be limited to those who expended money on repairs is therefore reasonable and the objection to this limitation does not render the settlement unfair or unreasonable. Moreover, class members who chose not to have their vehicle repaired could have opted out of the settlement and pursued their claims individually to attempt to secure compensation for damages they choose not to repair. Thus, the objection is not a reason to reject the settlement.

**ii. Neff Objection**

The next objection [the "Neff Objection"] asserts that the plaintiffs "neglected to properly maintain their cars," that the objector "find[s] it difficult to find fault in Volkswagen of America," and that the plaintiffs should "graciously pay [their] bill[s]." [17] (Neff Objection, Nov. 13, 2012, ECF No. 399.) In essence, the Neff Objection argues that the class is not entitled to recovery at all because the Neff Objector asserts **[*41]** the damage sustained is due to the class members' failure to properly maintain their vehicles. Although certain class members' satisfaction with their vehicles may have posed a proof problem for the Plaintiffs if the case proceeded to trial, it is not a basis to reject the settlement, particularly where Class Counsel represented that they collected evidence during discovery demonstrating that the cars had a defect that led to water damage in numerous vehicles. (Fairness Hearing II 25:30.) Moreover, class members like Neff who are pleased with their vehicles and do not seek compensation may exclude themselves from the settlement. Thus, Neff's assertion that the class members are responsible for their own damages is not a reason to reject the settlement.

> 17    Class Counsel asserted during the December 5, 2012 Fairness Hearing that the Neff Objection was untimely because it was docketed on November 13, 2012. Because the objection is postmarked October 29, 2012, however, the Court finds that it was timely submitted.

**iii. Attorneys' Fees Choice of Law**

The next objection [the "Murray Objection"] asserts that the Plaintiffs' attorneys' fees should be limited by the application of New Jersey state **[*42]** law. (Murray

Objection, Oct. 23, 2012, ECF No. 375.) For the reasons set forth elsewhere in this Opinion, the Court has determined that federal law governs the fee request and that the agreed-upon attorneys' fees are reasonable under the governing law.

### iv. Attorneys' Fees Calculation

The final objection [the "Braverman Objection"] asserts that, for a variety of reasons, the Plaintiffs' attorneys' fees are improperly calculated and should be reduced. (Braverman Objection, Nov. 6, 2012, ECF No. 383.) For the reasons set forth elsewhere in this Opinion, the Court has determined that the agreed-upon attorneys' fees are reasonable under the governing law.

Given the method by which notice was provided, the fact that only five out of 1,095,350 affected class members filed objections, and because none of the objections warrants a finding that the settlement is unreasonable, the Court can infer that the supermajority of the class supports the settlement.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

As to the stage of proceedings and extent of discovery, the Court incorporates by reference its findings in *Dewey, 728 F. Supp. 2d at 583-84*, and concludes that this factor weighs **[*43]** in favor of approving the settlement.

### 4 & 5. The Risks of Establishing Liability and Damages

As to the risks of establishing liability and damages at trial, the Court incorporates by reference its findings in *Dewey, 728 F. Supp. 2d at 584-85*, and concludes that this factor weighs in favor of approving the settlement.

### 6. The Risks of Maintaining the Class Action Through the Trial

As to the risk of maintaining the class action through trial, the Court incorporates by reference its findings in *Dewey, 728 F. Supp. 2d at 585*. Moreover, this risk manifested itself in part when certification of the settlement class was vacated on appeal as a result of a single structural error. The Court therefore concludes that this factor weighs in favor of approving the settlement.

### 7. The Ability of the Defendants to Withstand a

### Greater Judgment

As to the ability of the defendants to withstand a greater judgment, the Court incorporates by reference its findings in *Dewey, 728 F. Supp. 2d at 585-86*, and **[*44]** concludes that this factor does not indicate that a settlement is necessary to ensure that the plaintiffs obtain relief for their alleged injuries, but also does not alone dictate that the settlement is unreasonable.

### 8 & 9. The Range of the Reasonableness of the Settlement Fund in Light of Both the Best Possible Recovery & All the Attendant Risks of Litigation

As to the reasonableness of the settlement, the Court incorporates by reference its findings in *Dewey, 728 F. Supp. 2d at 586-87*, and further notes that the New Settlement Agreement provides for reimbursement for repairs to all affected vehicles, without a distinction based on incidence of damage to specific groups of vehicles. The New Settlement Agreement permits more than one million additional class members to recover money from the settlement fund without simply hoping that the Defendants will show good will to reimburse them. Indeed, the New Settlement Agreement further provides that if reimbursement claims exceed the settlement fund, the Defendants will contribute additional funds to satisfy all claims. (New Settlement Agreement ¶ 5.) As a result, the New Settlement Agreement provides at least as great a benefit as the settlement **[*45]** that the Court previously found to provide a reasonable recovery to the class.

Thus, the Girsh factors support a finding that the settlement is fair and reasonable and is in the best interest of the settlement class, and the settlement is hereby approved.

The Court now turns to the motion for fees and expenses for class counsel.

### D. Plaintiffs' Attorneys' Fees, Costs, and Incentive Award

### 1. Fees

### a. Applicable Law

*Rule 23* provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." *Fed. R. Civ. P. 23(h)*. Thus, a

reasonable fee award is permitted if it is: (1) authorized by law; or (2) agreed upon by the parties. Unlike the 2010 Settlement Agreement, in which the parties agreed that there should be an award of "reasonable attorneys' fees" but did not agree to an amount or the law applicable to its calculation, the New Settlement Agreement specifies that Class Counsel will apply for an award of fees and expenses not to exceed $9,884,782.94, 18 and that the Defendants agree not to oppose or appeal an award in that amount. (New Settlement Agreement ¶ 15.1.) Therefore, the fee award is **[\*46]** sought "by the parties' agreement" pursuant to *Rule 23(h)*. Because the parties have agreed on a specific fee award, the Court need not interpret the parties' contract to determine what they contend constitutes "reasonable attorneys' fees."

> 18    Because this figure includes expenses, the Court deducts the expenses Class Counsel seek to determine the portion that constitutes the agreed-upon fee award. Class Counsel seek expenses in the amounts the Court approved in the prior settlement, (see Pl. Br. 15, Oct. 16, 2012, ECF No. 370), namely $385,962.57 to Mazie Slater and $291,572.18 to Schoengold & Sporn, *Dewey, 728 F. Supp. 2d at 616*, resulting in an agreed-upon fee award of $9,207,248.19, the amount the Court awarded in its prior Opinion.

Nonetheless, the Court must thoroughly analyze the application for attorneys' fees in a class action settlement to ensure that it is "reasonable," as *Rule 23(h)* requires. *Fed. R. Civ. P. 23(h)*; see also *In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 299 (3d Cir. 2005)* ("In re Rite Aid"); *Yong Soon Oh v. AT & T Corp., 225 F.R.D. 142, 146 (D.N.J. 2004)*. This is so even where, as here, the parties have consented to the proposed attorneys' fees, *Yong Soon Oh, 225 F.R.D. at 146* **[\*47]** (citing *In re AremisSoft Corp. Sec. Litig., 210 F.R.D. 109, 128 (D.N.J. 2002)*), because of the risk that the "lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment for fees." *In re Gen. Motors, 55 F.3d at 820* (citation and internal quotation marks omitted).

As to choice of law in assessing the reasonableness of an agreed-upon fee award, the Court incorporates by reference its observations in Dewey regarding the absence of fee shifting as a basis for the fee award. *728 F. Supp. 2d at 589 n.62*. No fee shifting statute is triggered because no "party is compelled by statute to bear the

opposing party's fees." *In re Diet Drugs, 582 F.3d 524, 540 (3d Cir. 2009)* (citing *Alyeska Pipeline Svc. Co. v. Wilderness Soc'y, 421 U.S. 240, 269-70, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975))*. Rather, the fee award is being made by agreement of the parties. In such a case, where the defendant agrees to pay fees and does not admit liability, federal class action law determines the fee award. See, e.g., *McGee v. Continental Tire North America Inc., Civ. No. 06-6234, 2009 U.S. Dist. LEXIS 17199, 2009 WL 539893, at \*13 (D.N.J. Mar. 4, 2009)* (applying federal law to a fee award in a Class Action Fairness **[\*48]** Act settlement of claims under, among other things, the New Jersey Consumer Fraud Act); *Briggs v. Hartford Fin. Servs. Group, Inc., Civ. No. 07-5190, 2009 U.S. Dist. LEXIS 66777, 2009 WL 2370061, at \*14, 15 n.92 (E.D. Pa. July 31, 2009)* (applying federal case law to decide class counsel's fee request in a CAFA case based upon state law and reminding counsel that federal law governs applications filed in federal class action cases); *First State Orthopaedics v. Concentra, Inc., 534 F. Supp. 2d 500, 523-24 (E.D. Pa. 2007)*.

The Murray Objectors 19 object to the Court's application of federal law and rely on *Security Mutual Life Ins. Co. of New York v. Contemporary Real Estate Assoc., 979 F.2d 329 (3d Cir. 1992)* and *In re Volkswagen and Audi Warranty Extension Litig., 692 F.3d 4 (1st Cir. 2012)*. Neither case, however, applies here. Security Mutual concerns an award of attorneys' fees to a prevailing party in a state law, non-class case. *979 F.2d at 329*. The First Circuit Volkswagen case is also not applicable for two reasons. First, the parties in Volkswagen entered a contract wherein they agreed to "an award of reasonable attorneys' fees" but did not agree to a specific amount or a method for calculating that amount. **[\*49]** *692 F.3d at 9*. Thus, the district court below was tasked with interpreting the parties' settlement agreement to determine the meaning of the fee provision as a matter of state substantive contract law. *Id. at 15* (stating "interpreting [settlement] agreements and their scope is a matter of state contract law"). Here, there is no contractual dispute as to what the parties intended the amount of the fee award to be. The New Settlement Agreement specifies an amount and the Court's sole task is to determine whether this amount is a permissible award as defined by *Rule 23(h)*. This is a question of federal law. Second, the First Circuit common fund law differs from that of the Third Circuit. In the First Circuit, the percentage-of-recovery approach appears limited to

circumstances where the attorneys' fees are paid from the same fund as that being used to compensate the class. *Id. at 16-17.* In the Third Circuit, the Court can use the percentage-of-recovery method when the source of payment to the class and counsel is the same but the fees are not coming from the fund set up to compensate the class. *In re General Motors, 55 F.3d at 821.* Thus, the federal law of the First Circuit would have **[*50]** mandated use of the lodestar method where payment to the class and to counsel came from separate funds, as in this case. Third Circuit precedent does not.

19    The Braverman Objectors also advocate for the application of New Jersey law.

Moreover, even if the Court applied New Jersey state law, as the Murray and Braverman Objectors suggest, the result would not be different. Two separate panels of the New Jersey Superior Court, Appellate Division, have relied upon the federal precedent of the Third Circuit to determine the fee award in class actions. See *Sutter v. Horizon Blue Cross Blue Shield of New Jersey, No. L-3685-02, 2012 N.J. Super. Unpub. LEXIS 1661, 2012 WL 2813813, at *5-6, *3 n.1 (N.J. Super. Ct. App. Div. July 11, 2012)* (characterizing federal class action cases as persuasive authority, describing methods of calculation as set forth in federal precedent, and holding in accordance with federal law that the "ultimate choice of methodology rests within the court's discretion"); *Sutter v. Horizon Blue Cross Blue Shield of New Jersey, 406 N.J. Super. 86, 103-06, 966 A.2d 508 (App. Div. 2009)* (applying federal precedent in determining whether trial court properly calculated reasonable fee award.) Thus, even if the Court were to apply **[*51]** New Jersey state court precedent, it would simply be directed back to the federal law of the Third Circuit.

Braverman's other arguments against the agreed-upon fee award are also meritless. First, Braverman contends that class counsel's time entries attributable to negotiating and seeking approval of the 2010 settlement should not be compensable in a lodestar analysis because counsel made an error that led to a remand of the settlement. (Braverman Opp'n 3-8.) In performing a lodestar cross-check, the Court may rely on activity summaries and "need not review actual billing records." *Rite Aid, 396 F.3d at 306-07* (citing *In re Prudential, 148 F.3d at 342*). Thus, the particularized inquiry that Braverman seeks is not required. In addition, Braverman's argument that Class Counsel should not be

credited for time spent negotiating the 2010 settlement ignores the fact that the New Settlement Agreement is largely the product of counsel's efforts in 2010, as every part, except for the ability of one category of cars to obtain certain cash reimbursement, remains intact. (Fairness Hearing II 1:04:13.) Moreover, Class Counsel are not seeking to be compensated for the additional work undertaken to **[*52]** argue the case on appeal and negotiate a new settlement that complied with the Third Circuit's mandate. [20] Thus, Class Counsel, recognizing that their error required a revised settlement, have not sought compensation for work performed to cure the error.

20    If Class Counsel had sought compensation for the time they spent to cure their error, the result may have been different. Here, Class Counsel are not seeking to be paid twice to reach a settlement and their decision not to seek additional compensation for their work on the appeal and renegotiating the settlement shows their acknowledgment that to do otherwise could be viewed as seeking compensation for work their own error caused them to perform.

Second, Braverman contends that class counsel's hourly rate should be lower than that which the Court applied because the initial settlement was rejected on appeal and because of certain comments regarding counsel's performance in a judicial opinion in an unrelated case. (Braverman Opp'n 3-8.) For the reasons set forth in *Dewey, 728 F. Supp. 2d at 608*, the downwardly-adjusted hourly rate used to conduct the cross-check properly valued Class Counsel's services based upon their work and experience, **[*53]** even where one of the class's attorneys had not previously handled a class action case. Moreover, another judge's comments about counsel's firm on issues specific to an unrelated case has no bearing on determining the hourly rate that applies to the work performed here.

Third, Braverman suggests that the 2010 hearing on the fee applications was insufficient and argues that the Court should hold a hearing where objectors can cross-examine the experts and engage their own expert witnesses. (Id. 2.) The Third Circuit has already determined that the procedures employed at the 2010 Fairness Hearing were sufficient, *Dewey, 681 F.3d at 177 n.8*, and the objector has not shown that additional examination and discovery was necessary.

A. 17

### b. Reasonableness of Fees

In *Dewey, 728 F. Supp. 2d at 589-92*, the Court applied federal class action case law to determine what method it would use to calculate a fee award. In its prior Opinion, the Court determined that a percentage-of-recovery analysis with a lodestar cross-check was the appropriate method for calculating a reasonable fee award because: (1) fees were being paid voluntarily; (2) the settlement's value was quantifiable; and (3) the settlement fund **[*54]** and fees were being paid from the same source. See *id. at 592*. Applying that method, the Court ultimately concluded that $9,207,248.19 was a reasonable and appropriate fee award based on the Court's valuation of the settlement. The Court's valuation is the law of the case, and under the New Settlement Agreement, the value to the class is at least as great. [21]

> [21]    During the December 5, 2012 Fairness Hearing, the Murray Objectors argued that the Court should revisit and reduce the valuation of the settlement because the 2010 valuation was based on Dr. Eads's projections rather than the actual claims data that are now available. (Fairness Hearing II 36:50, 40:40.) Specifically, the Murray Objectors argue that because there have been approximately $5 million worth of reimbursement claims, not the $8 million set aside in the fund, the value of the entire settlement should be proportionally reduced by a ratio of 5:8 or 62.5%. (Id.) The assertion that the value of the settlement is lower now than in 2010 fails. First, the value of cash reimbursements to date is expected to be greater than the $5 million already approved for payment to class members in the former reimbursement group. (See Eisert **[*55]** Decl. III ¶¶ 3-4 (projecting the value of claims from the former residual group to be between $466,048.80 and $782,296.20).) In addition, this argument fails to acknowledge that the approximately $2.5 million difference remains in the settlement fund for good will payments for the next five years, and any such payments remain part of the cash value of the settlement. Second, under the New Settlement Agreement, the Defendants have agreed to pay all timely submitted compensable reimbursement claims, even if they exceed the $8 million settlement fund, and thus the cash value may exceed $8

million. (New Settlement Agreement ¶ 5 (stating that "[i]n the event that the Reimbursement Fund plus accrued interest thereon is not sufficient to pay all eligible Reimbursement Claims, Defendants shall make additional contributions to the Reimbursement Fund such that all eligible Reimbursement Claims will be paid in full.").) Third, there is no basis to conclude that the value of the non-cash components of the settlement varies in proportion with, or is even correlated to, the value of cash reimbursements. It is entirely plausible, for example, that cash reimbursements would be made at a rate lower **[*56]** than expected precisely because the non-cash components, like preventative maintenance and education, have been followed and eliminated the need for repairs, thereby resulting in fewer requests for cash reimbursement for repairs. Thus, there is no basis to reduce the valuation of the settlement in proportion with the ratio of existing cash reimbursement claims that have been made.

Because the Court has already determined that $9,207,248.19 was a reasonable award in 2010 and reflects an appropriate percentage of recovery as discussed in *Dewey, 728 F. Supp. 2d 592-609*, the value to the class is at least as great under the New Settlement Agreement, and the Plaintiffs do not seek a higher award based on their work on the appeal and in negotiating and implementing the New Settlement Agreement, the Court incorporates by reference its analysis in *Dewey, 728 F. Supp. 2d at 592-609* and approves as reasonable the agreed-upon award of $9,207,248.19. [22]

> [22]    Class Counsel's efforts since 2010 could arguably support a somewhat increased fee award. *Gunter v. Ridgewood Energy Corp., 223 F.3d 190 (3d Cir. 2000)*. First, as to the size of the fund and number of persons benefitted, the amount of cash reimbursement **[*57]** paid to class members may increase depending on the number of claims filed. Second, as to the presence or absence of substantial objections, there are fewer objections to the New Settlement Agreement, and the most vocal objectors to the prior settlement are now satisfied with the recovery. Third, as to the skill and efficiency of the attorneys, Class Counsel negotiated a modified settlement to comply with the Third Circuit's mandate even before it issued. (See Order, June 27, 2012, ECF No. 320.) Fourth,

as to the complexity and duration of the litigation, Class Counsel have worked for two additional years and have spent significant additional hours since 2010 arguing the case on appeal and negotiating, executing, and seeking approval of the New Settlement Agreement. (Sporn Cert. ¶ 6, Oct. 16, 2012, ECF No. 369.) The Court, of course, notes that had the structural error not occurred and the original settlement provided the benefits now granted, this extra work would not have been required.

## 2. Costs

*Rule 23(h)* also provides for an award of costs. The Court has previously approved payment of costs in the amounts of $385,840.01 [23] to Mazie Slater and $291,572.18 to Schoengold & Sporn. Class **[*58]** Counsel do not seek costs in excess of those awarded in the prior Opinion, despite incurring additional expenses since that time. Thus, for the reasons stated in *Dewey, 728 F.Supp. 2d at 610-16,* the Court approves the award of the previously approved costs, for a total of $677,412.19.

> 23    In the conclusory paragraph of the Court's prior Opinion and in the prior Judgment, the costs to Mazie Slater are incorrectly stated as $385,962.57. That figure erroneously includes $122.56 for "searches," which the Court determined was not reimbursable for lack of specificity. *Dewey, 728 F. Supp. 2d at 615.*

Like his challenge to the fee award, Braverman's challenge to the cost award also fails. Braverman argues that costs associated with fee applications are not compensable and as such, Class Counsel are not entitled to reimbursement for expert fees for Dr. Eads. (Braverman Ltr. 1, Nov. 7, 2012, ECF No. 385.) During the November 9, 2012 telephonic hearing, the Plaintiffs represented that Dr. Eads would have been a trial witness. (Nov. 9, 2012 Hearing 1:27:07.) Moreover, Dr. Eads' expert opinion on valuation was necessary to evaluate whether the settlement itself was fair. Thus, even assuming, without **[*59]** deciding, that Braverman is correct that costs associated with a fee petition are not compensable, the costs associated with Dr. Eads's report were not strictly for the purpose of securing a fee award and are therefore compensable.

## 3. Incentive Award to Class Representative Plaintiffs

The Court incorporates by reference its discussion of incentive awards to the class representative Plaintiffs in *Dewey, 728 F. Supp. 2d at 577-78,* and, for the reasons stated therein, will approve payment of $10,000 to each representative plaintiff: Kenneth Bayer, Jacqueline Delguercio, Patrick DeMartino, John M. Dewey, Lynda Gallo, Edward O. Griffin, Ronald Marans, Francis Nowicki, and Patricia Romeo.

## E. Objectors' Attorneys' Fees, Costs, and Incentive Award

### 1. Fees

The Court now turns to the respective motions of the Sibley Objectors and the West Objectors for fees and expenses. As with awards of attorneys' fees in general, whether to grant, and the method for calculating, an award of fees to objectors' counsel rests within the court's discretion. *In re Prudential, 273 F. Supp. 2d at 566* (citing *In re Gen. Motors, 55 F.3d at 820*). The requirement that the district court thoroughly analyze the fee application, **[*60]** even where the parties have agreed to the award, also remains in place. Id. Objectors, however, play "a different role in this litigation from that of Class Counsel," *id. at 565,* and are not entitled to an award of attorneys' fees unless "the settlement was improved as a result of their efforts." Id.; see also *Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1051-52 (9th Cir. 2002); Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 288 (7th Cir. 2002); White v. Auerbach, 500 F.2d 822, 828 (2d Cir. 1974); Spark v. MBNA Corp., 289 F. Supp. 2d 510, 513 (D. Del. 2003); In re Westinghouse Secs. Litig., 219 F. Supp. 2d 657, 660 (W.D. Pa. 2002).*

Some courts have determined that an objector may improve a settlement without producing a quantifiable increase in the size of the settlement fund. See, e.g., *Park v. Thomson Corp., 633 F. Supp. 2d 8, 11 (S.D.N.Y. 2009)* (stating that "[s]ome courts have also rewarded objectors' counsel for advancing non-frivolous arguments and transforming the settlement hearing into a truly adversarial proceeding") (citations and internal quotation marks omitted); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P., 212 F.R.D. 400, 413 (E.D. Wis. 2002)* **[*61]** (concluding "that the objector contributed materially . . . by assisting the court and enhancing the adversarial process"); *In re Ikon Office Solutions, Inc., Sec. Litig., 194 F.R.D. 166, 197 (E.D. Pa. 2000)* (stating that "if the objection confers a benefit on the class *or assisted the court by sharpening*

A. 19

*debate*, fees may be appropriate") (emphasis added). Other courts have refused to award fees where the objector merely enhanced the adversarial process. See, e.g., *Martin v. Foster Wheeler Energy Corp.*, Civ. No. 06-878, 2008 U.S. Dist. LEXIS 25712, 2008 WL 906472, at *10 (M.D. Pa. Mar. 31, 2008). Thus, objectors must have economically benefitted the class or, at the very least, shown that a court adopted their objection. See id.; see also *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 855 (10th Cir. 1993) (noting that objectors "may be entitled to attorneys' fees if the court in its discretion finds that the objections were valid or otherwise conferred class benefits") (citations and internal quotation marks omitted).

Here, the Sibley and West Objectors [24] improved the settlement in that they identified a deficiency in the adequacy of the representative plaintiffs and successfully pursued their **[*62]** argument on appeal, such that a new settlement was negotiated that eliminated the distinction between class members in the "reimbursement" and "residual" groups. The Court therefore determines that fee awards shall be granted as follows.

> 24    The Court's use of the term "professional objector" did not intend to connote that the objections presented in 2010 or now were motivated by a desire to hold up the settlement for personal profit, even though some academic commentary assigns such a meaning to the term. (See Frank Fees Decl. ¶ 62.) This, however, does not change the fact that certain objectors are represented by attorneys who are in the profession of objecting to class action settlements, whether motivated by views of the law, ideology, or otherwise. The phrase was not meant to be pejorative and this professional focus does not bar counsel from receiving an appropriate fee award where counsel has advocated for and helped secure an improved settlement to the benefit of the class.

**a. West**

As to the West Objectors, by agreement, counsel seek an award of $82,134.10, [25] half to be paid by the Defendants and half to be paid by Schoengold & Sporn. (Proposed Judgment, Nov. 7, 2012, ECF No. 386.) **[*63]** The West Objectors correctly advocate the application of federal law in calculating their fee award, and the Court concludes that a percentage-of-recovery analysis applies

here to assess the objectors' fee request. This approach requires the Court to assign a value that the objectors have added to the settlement to determine whether the amount sought constitutes an appropriate percentage of recovery. The West Objectors argue that no value should be assigned to non-monetary terms of the settlement and that benefit to the class should be measured by the amount of cash class members receive. (Frank Fees Decl. ¶ 23.) The Court has found the non-monetary terms of the settlement have a value and the advocacy of the objectors has not changed the value assigned to that portion of the settlement. Rather, their advocacy provided certainty concerning the ability for owners or lessees of one category of vehicles to obtain cash reimbursement for specific damages. Thus, focusing on the value they added by giving such certainty, as of December 4, 2012, there were 151 approved claims with a value of $55,851, or an average of $369.87 per claim. (Eisert Decl. III.) There are 1,964 additional claims **[*64]** pending further review. Assuming the value of each additional claim has the same average amount of $362.77, the total value of actual claims submitted by the affected class members would be $782,283.87. This reflects the value added as a result of the Objectors' efforts to ensure that the former residual group need not rely only on the Defendants' good will to obtain reimbursement. Under this valuation of $782,283.87, the West Objectors seek an award of $82,134.10, which is equal to 10.5% of the benefit conferred, well within the range of acceptable percentages-of-recovery. See *Dewey, 728 F. Supp. 2d at 604-05.*

> 25    The West Objectors seek "as much as $87,321.07" in attorneys' fees and "as much as $4,167.52" in expenses. (Frank Supp. Fees Decl.) By agreement of the parties, however, the West Objectors have agreed not to seek more than $86,000 in combined fees and expenses, exclusive of $4,000 in incentive awards. The Court has identified $1,186.97 in compensable expenses in addition to the $2,678.93 the Third Circuit has already awarded, for a total of $3,865.90. See Section IV.E.2.a infra. Thus, the Court will treat the West Objectors' application as including a request for $82,134.10 **[*65]** attorneys' fees, exclusive of expenses and incentive awards, such that combined fees and expenses total $86,000.

Moreover, the lodestar cross-check shows the percentage is reasonable. Counsel state that their fees

under the lodestar method would be between $185,275.16 and $274,221.00, for 524.5 hours of work. (Frank Fees Decl. ¶ 74.) Counsel asserts that Mr. Frank's hourly rates are between $470.19 and $750.00 per hour, that Mr. Schulman's hourly rates are between $219.76 and $240.00 per hour, and that Ms. Burnell's rates are $150.00 per hour. (Id.) Assuming without deciding the hourly rates and hours worked are reasonable, the agreed-upon fee award is 44% of the conservative lodestar figure. A lodestar multiplier of .44 is well within the acceptable range. See *Dewey, 728 F. Supp. 2d at 606.* Moreover, assuming counsel's hours of 524.5 to be reasonable, the agreed-upon fee award results in an actual average billing rate of only $156.60 per hour. This too shows the reasonableness of the award sought.

**b. Sibley**

By agreement, counsel for the Sibley Objectors seek an award of $25,000.00, half to be paid by the Defendants and half to be paid by Schoengold & Sporn. (Sibley Costs Decl.; Proposed **[*66]** Judgment, Nov. 7, 2012, ECF No. 386.) Because the Sibley Objectors have agreed not to seek more than $25,000, inclusive of the $2,470.02 awarded them by the Third Circuit, (Sibley Costs Decl. ¶ 2), the Court will treat the difference, $22,529.98, as the Sibley Objectors' fee application.[26]

> 26    Although the Sibley Objectors supplemented their application with a Bill of Costs on December 3, 2012, the Bill of Costs does not identify and itemize taxable costs or non-taxable expenses before the district court and will not be treated as a separate costs application.

The Sibley Objectors do not affirmatively advocate for a particular method of evaluating their attorneys' fee request, though they provide the factual information necessary to conduct a full lodestar analysis. During the November 9, 2012 Fairness Hearing, counsel indicated that he had provided billing entries to enable the Court to perform a lodestar analysis but, by agreement, he was not seeking the full lodestar amount. (Nov. 9, 2012 Hearing 58:45.) For the reasons discussed earlier, however, the Court will apply a percentage-of-recovery analysis in assessing the Sibley Objectors' fee award. Under the valuation of the benefit **[*67]** to the class discussed above, $782,283.87, the $22,529.98 the Sibley Objectors are seeking is 2.9% of the benefit conferred, which is well within the range of acceptable percentages-of-recovery. See *Dewey, 728 F. Supp. 2d at 604-05.*

Applying the lodestar cross-check, counsel state that their fees under the lodestar method are $47,750.00, for 95.5 hours of work, multiplied by a $500 per hour rate. (Sibley Decl. ¶ 8, Aug. 27, 2012, ECF No. 337.) Assuming without deciding that the hourly rate and the hours worked are reasonable, the agreed-upon fee award is 47% of the lodestar figure. A lodestar multiplier of .47 is well within the acceptable range. See *Dewey, 728 F. Supp. 2d at 606.* Moreover, assuming counsel's hours of 95.5 to be reasonable, the agreed-upon fee award results in an actual average billing rate of only $235.92 per hour, further indicating that the requested fee award is reasonable.

In aggregate, the West and Sibley Objectors seek attorneys' fees in the amount of $104,664.08. Under the valuation of the benefit to the class discussed above, $782,283.87, the West and Sibley Objectors are seeking, in aggregate, 13.4% of the benefit conferred, which is within the range of acceptable **[*68]** percentages-of-recovery. See *id. at 604-05.* Applying the lodestar cross-check, the agreed-upon fee awards, in aggregate, are 45% of the conservative aggregate lodestar figure. A lodestar multiplier of .45 is well within the acceptable range. See *id. at 606.* Moreover, assuming counsel's aggregate hours of 620 to be reasonable, the agreed-upon fee awards result in an actual average billing rate of only $168.81 per hour.

In conclusion, whether viewed individually or jointly, the West and Sibley Objectors' agreed-upon attorneys' fees are reasonable under the percentage-of-recovery analysis and satisfy the lodestar cross-check, assuming the benefit to the class conferred by their actions is the value of the reimbursement claims under the New Settlement Agreement. Thus, the motions for an award of fees are granted and fees in the amount of $82,134.10 shall be awarded to counsel for the West Objectors and fees in the amount of $22,529.98 shall be awarded to counsel for the Sibley Objectors.

**2. Costs**

**a. West**

In accordance with their agreement with the parties, the West Objectors seek $86,000 in fees and costs in both the District Court and on appeal, exclusive of $4,000 in incentive awards. As **[*69]** explained above, the $86,000

includes a request for $3,865.90 in costs, $2,678.93 of which the Third Circuit has already awarded in connection with the successful appeal. (Frank Supp. Fees Decl.) The remaining $1,186.97 [27] is attributable to "nontaxable expenses borne by litigants" in the District Court that may be awarded pursuant to the parties' agreement under *Fed. R. Civ. P. 23(h), Taniguchi v. Kan Pacific Saipan, Ltd., 132 S. Ct. 1997, 2006, 182 L. Ed. 2d 903 (2012)*, and the West Objectors will be awarded expenses in that amount, in addition to the $2,678.93 already taxed by the Third Circuit.

> 27   These expenses awarded pursuant to *Fed. R. Civ. P. 23(h)* consist of $698.65 for court transcripts and $488.32 for travel to and from Newark. (Frank Costs Decl.)

**b. Sibley**

The Sibley Objectors filed a Bill of Costs on December 3, 2012 which lists $2,645.02 in costs, consisting of $2,470.02 that the Third Circuit has already awarded as taxable in connection with the successful appeal, as well as $175 for transcripts. (Sibley Bill of Costs.) As explained above as to attorneys' fees, because the Sibley Objectors applied for $25,000 in fees and costs without itemizing specific costs, and because they have agreed [*70] not to seek more than that amount in total, (Sibley Costs Decl. ¶ 2), the Court will award $22,529.98 in fees, along with the $2,470.02 in costs taxed by the Third Circuit, for a total of $25,000.

**3. Incentive Award to Objectors**

The West Objectors seek $4,000 total in incentive awards: $2,000 to be allocated to West, and $1,000 each to McKinney and Sullivan. (West Mot., Oct. 16, 2012, ECF No. 369.) A number of courts have considered the propriety of permitting incentive awards to objectors with varying outcomes. See, e.g., *Hartless v. Clorox Co., 273 F.R.D. 630, 647 (S.D. Cal. 2011)* (recognizing that an incentive award to an objector might be appropriate in some instances); *UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Mining Corp., Civ. No. 05-1046, 2008 U.S. Dist. LEXIS 87842, 2008 WL 4452332, at *4 (D. Colo. Sept. 30, 2008)* (expressing doubt that an incentive award to an objector can ever be appropriate but assuming without deciding that it could be in some cases). In deciding whether an objector deserves an incentive award, courts have considered whether: (1) the objector's particular efforts

conferred a benefit on the class; (2) the objector incurred personal risk; and/or (3) the objector [*71] was substantively involved in the litigation. See *Park, 633 F. Supp. at 14* (identifying personal risk and effort expended for the benefit of the lawsuit as factors affecting the decision to award incentive fees to objectors); *UFCW Local, 2008 U.S. Dist. LEXIS 87842, 2008 WL 4452332, at *4* (stating that the objector has the burden of showing that "his actions resulted in a substantial benefit to the class such that an incentive award . . . is appropriate"). At least one court has refused to approve an incentive award sought on the basis that an objector faced the risk of Rule 11 sanctions, explaining that "Rule 11 sanctions are a risk borne by all litigants." *Park, 633 F. Supp. 2d at 14*. Among those cases to have entertained requests for objector's incentive awards, the Court is aware of only two finding that the circumstances warranted such an award. In *In re Apple Inc. Sec. Litig.*, the court found that an incentive payment of $1,000 would fairly compensate the objector for his contribution where that objector conferred a significant benefit to the class by causing $2.5 million to be paid to class members rather than donated to universities, *Civ. No. 06-5208, 2011 U.S. Dist. LEXIS 52685, 2011 WL 1877988, at *5 (N.D. Cal. May 17, 2011)*, and [*72] in *Lonardo v. Travelers Indem. Co.*, the court awarded an objector the "nominal sum" of $500 for his "nominal contribution" to the case in objecting to procedural hurdles to class recovery and the amount of the attorneys' fee award. *706 F. Supp. 2d 766, 813 (N.D. Ohio 2010)*.

The West Objectors base their request for an incentive award on the "selflessness" they allegedly demonstrated by pursuing appeal of the settlement. Specifically, the West Objectors submit that they "refuse[d] to accept personal payment to withdraw their objections" in the interest of benefitting the class as a whole. (See Frank Fees Decl. ¶ 29.) The West Objectors further argue that in challenging the approval of the settlement, they incurred a substantial personal risk by: (1) exposing themselves "to the risk of harassing discovery and private investigation from the plaintiffs' attorneys," (West Br. 14); and (2) posting an appeal bond of $25,000. (Id.) As to substantive involvement with the litigation, the West Objectors submit that they initiated the objection and were "kept in the loop" throughout the process. (Frank Fees Decl. ¶ 32.)

The West Objectors' contribution to the case warrants only a nominal incentive [*73] payment. Unlike

their counsel or the representative plaintiffs, there is no indication that the objectors themselves devoted the sort of "substantial time or effort" that might support an award in excess of those granted in other cases. *Lonardo, 706 F. Supp. 2d at 813*; see also *Lobur v. Parker, 378 F. App'x 63, 65 (2d Cir. 2010)* (affirming denial of incentive award to objectors who expended "minimal effort," despite their having contributed to "an improvement to the distributional fairness" of the settlement). Furthermore, the record is not sufficient to support the position that Mr. West is entitled to a greater award than Messrs. McKinney or Sullivan. West argues that he was "personally given information" that he could have made a claim on the residual of the settlement fund, but he nevertheless decided to postpone recovery and proceed with the appeal "for the larger benefit of the class." (West Br. 14.) There is no description of the information he received and so that Court cannot evaluate what he supposedly gave up. Moreover, the 2010 Settlement Agreement provided that moneys remaining after reimbursement of claims would be held for five years and "utilized to fund or reimburse, **[*74]** as applicable, VWGoA payments for repairs beyond warranty made on a case-by-case basis to Settlement Class Members . . . ." (2010 Settlement Agreement ¶ 6.1, Feb. 11, 2010, ECF No. 174.) Thus, the 2010 Settlement Agreement provided West and others like him an opportunity to secure a benefit. There is nothing in the record indicating that West was personally offered, but declined, any special or exclusive opportunity to obtain reimbursement outside of that provision. Finally, there is nothing to show that the objectors faced a risk not "borne by other litigations." *Park, 633 F. Supp. 2d at 14*. Nonetheless, the willingness to serve as objectors so that their counsel could pursue a legal challenge that ultimately provided a certain benefit to like car owners and lessees warrants some incentive award, and the Court will therefore approve an incentive payment of $500 to each of the West Objectors.

## V. **CONCLUSION**

For the reasons stated herein, the motion for final approval of the settlement class and class settlement is granted, the amount of $9,207,248.19 shall be awarded as fees to Class Counsel, and reimbursement for expenses is granted in the amount of $385,840.01 to Mazie Slater Katz and **[*75]** Freeman, LLC and in the amount of $291,572.18 to Schoengold & Sporn, P.C. The amount of

$10,000 shall be awarded to each of the following class representatives: Kenneth Bayer, Jacqueline Delguercio, Patrick DeMartino, John M. Dewey, Lynda Gallo, Edward O. Griffin, Ronald Marans, Francis Nowicki, and Patricia Romeo. The amount of $82,134.10 shall be awarded as fees to the Center for Class Action Fairness and $22,529.98 to Gary W. Sibley; reimbursement for expenses is granted in the amount of $3,865.90 inclusive of the Third Circuit's taxation of costs to the Center for Class Action Fairness and in the amount of $2,470.02 inclusive of the Third Circuit's taxation of costs to Gary W. Sibley; and $500 shall be awarded to each of the following objectors: Joshua West, Darren McKinney, and Michael Sullivan.

Judgments [28] consistent with this Opinion will be issued.

> 28  The Court will issue two separate judgments, one addressing relief to the class and incentive awards to the named plaintiffs and the West Objectors, and the other addressing attorneys' fees and costs to Class Counsel and the West and Sibley Objectors. Courts have embraced the practice of issuing separate judgments in an effort to **[*76]** promote timely distribution of relief to the class. See, e.g., *Reid v. Supershuttle Int'l, Inc., Civ. No. 08-4854, 2012 U.S. Dist. LEXIS 113117, 2012 WL 3288816 (E.D.N.Y. Aug. 10, 2012)*; *Meyenburg v. Exxon Mobil Corp., Civ. No. 05-15 ECF No. 58, 2006 U.S. Dist. LEXIS 52962 (S.D.I.L. July 31, 2006)*; *Meyenburg v. Exxon Mobil Corp., Civ. No. 05-15 ECF No. 48, 2006 U.S. Dist. LEXIS 97057 (S.D.I.L. June 6, 2006)*; see also *In re Bluetooth Headset Prods. Liability Litig., 654 F.3d 935 (9th Cir. 2011)* (observing that "vacatur of the fee award does not necessitate invalidation of the approval order"); *Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268 (9th Cir. 1989)* (considering an appeal of an attorneys' fee award without disrupting relief to the class).

/s/ Patty Shwartz

**United States Magistrate Judge**

Dated: December 14, 2012

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

| | |
|---|---|
| JOHN M. DEWEY, et al., | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : Civil Action No. 07-2249 |
| | : |
| VOLKSWAGEN OF AMERICA, et al., | : |
| | : |
| Defendants. | : |

_____

| | |
|---|---|
| JACQUELINE DELGUERCIO, et al., | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : Civil Action No. 07-2361 |
| VOLKSWAGEN OF AMERICA, et al., | : |
| | : |
| Defendants. | : |

_____

**ORDER AND JUDGMENT**

This matter having come before the Court on the motions of the Plaintiffs and of the West

and Sibley Objectors for awards of attorneys' fees and costs;

and the Court having conducted Fairness hearings on November 9, 2012 and December 5,

2012 and having considered all the arguments and papers filed in connection therewith, as well

as the argument of counsel, and for the reasons set forth in the Opinions dated July 30, 2012 and

December 14, 2012 and set forth on the record on July 26, 2012, November 9, 2012, and

December 5, 2012;

IT IS ON THIS 14th day of December, 2012

ORDERED that the motions for an award of attorneys' fees and expenses for Class

-1-

A. 24

Counsel, counsel for the West Objectors, and counsel for the Sibley Objectors [Civ. No. 07-2249, ECF Nos. 337, 369, and 370] is granted as set forth herein;

IT IS FURTHER ORDERED AND ADJUDGED as follows:

1.      Class Counsel are awarded the sum of $9,207,248.19 as and for attorneys' fees, which sum the Court hereby finds to be fair and reasonable, as well as reimbursement for expenses in the amount of $385,840.01 to Mazie Slater Katz and Freeman, LLC and in the amount of $291,572.18 to Schoengold & Sporn, P.C., plus any interest accrued through the date on which the amount awarded is paid, which amounts shall be paid directly to Class Counsel within 15 days after the effective date.  If an appeal is filed, these amounts shall remain in an interest bearing account pursuant to Section 15.3 of the Settlement Agreement; and

2.      The Center for Class Action Fairness, counsel for the West Objectors, is hereby awarded attorneys' fees of $82,134.10 and expenses of $1,186.97, in addition to the $2,678.93 in taxable costs already awarded by the Court of Appeals for the Third Circuit.  Gary W. Sibley, Esq., counsel for the Sibley Objectors, is hereby awarded attorneys' fees of $22,529.98, in addition to the $2,470.02 in taxable costs already awarded by the Court of Appeals for the Third Circuit.  The Defendants and Schoengold & Sporn, P.C. each shall be responsible to pay one half of these awards.  These payments shall be made in the same time and manner as the payments which are made to Class Counsel as set forth above.

s/Patty Shwartz
**United States Magistrate Judge**

A. 25